United States Court of Appeals,

Fifth Circuit.

No. 93-4140.

Willie RICHARDSON, and Rose Richardson, Plaintiffs-Appellants,

v.

Bill OLDHAM, Sheriff of Harrison County, Tex., et al., Defendants,

Harrison County, Texas, et al., Defendants-Appellees.

Jan. 28, 1994.

Appeal from the United States District Court for the Eastern District of Texas.

Before WISDOM, HIGGINBOTHAM, and JONES, Circuit Judges.

WISDOM, Circuit Judge.

Plaintiffs/appellants Willie and Rose Richardson allege that the defendants/appellees, law enforcement officers and their municipal employer, violated the Fourth Amendment when they searched the Richardsons' home on May 14, 1991. The district court granted summary judgment for the defendants after striking much of the plaintiffs' summary judgment evidence.[1] The Richardsons appealed to this Court. We hold that (1) the plaintiffs' Notice of Appeal was timely filed and vested this Court with jurisdiction; (2) while some of the district court's evidentiary rulings were erroneous, none rose to the level of harmful error; (3) the district court correctly ruled that defendant/appellee Tommy Harrell was entitled to qualified immunity; and (4) the district court correctly held that the plaintiffs/appellants had produced insufficient evidence of a municipal custom or policy to survive

---

[1] *Richardson v. Oldham,* 811 F.Supp. 1186 (E.D.Tex.1992).

summary judgment for the remaining defendants.  We AFFIRM.

I.

*A. The Parties*

Willie and Rose Richardson are an African-American couple in their mid-fifties.  At all times relevant to this case, they resided in Harrison County, Texas, at one of four houses located at Route 3, Box 628 off a then-unnamed dirt road which has since been christened Frierson.  All four houses shared the address "Route 3, Box 628".  To distinguish each house from its neighbors, each house bore an identifying letter of the alphabet, "A" through "D", but those letters were not visible from the road.

Harrison County Sheriff Bill Oldham's name still appears in the style of this case, but he is no longer a party to this litigation.  The Richardsons' claims against Oldham were dismissed with prejudice on July 9, 1992.[2]

Defendant/appellee Harrison County employed the two other defendants/appellees remaining in this case.  Defendant/appellee Tommy Harrell was a law enforcement employee of the County at the time this lawsuit began;  he has since died and the Richardsons have substituted his estate.  Harrell is sued in his official and individual capacities.  Defendant/appellee Rick Berry was the Harrison County District Attorney and Harrell's superior at the time this lawsuit arose.  Berry is sued only in his official capacity.

*B. The Investigation*

In 1991, Harrell conducted a narcotics investigation which led

---

[2] 2 Rec. 409-11.

him to suspect that someone who lived on the Richardsons' street was selling marijuana. Harrell presented a county judge with an affidavit of a confidential informant. The affidavit described a purported marijuana sale by an African-American female whose description does not fit any party to this case.[3]

Based on the affidavit, Harrell obtained a search warrant to search a house identified as "Route 3, Box 628" and described as "a single family residence of wood frame construction.... being a light colored (off white) colored structure having double entry front doors".[4] Neither the warrant nor the affidavit itself specified which letter of the alphabet, "A" through "D", identified the house to be searched. Two of the four houses at Route 3, Box 628 fit the description given in the informant's affidavit: the Richardsons' home and another house located across the street.

*C. The Search and its Aftermath*

Between 11:00 p.m. and midnight on May 14, 1991, Harrell and some Harrison County Sheriff's deputies broke down the front door of the Richardsons' home and burst in. The Richardsons were asleep in their bedroom at the time. Harrell and his men roused the Richardsons from bed and proceeded to search their home for one to two hours. The search caused the Richardsons great distress and embarrassment. Some deputies watched Mrs. Richardson use the bathroom, and the stress of the search so upset Mr. Richardson that

---

[3]The informant's affidavit described a meeting with a female who was shorter, weighed fifty to sixty pounds less, was lighter in complexion, and had a different hair color and style from Rose Richardson, the only black female involved in this case.

[4]2 Rec. 400.

he had to lie down.

Plainly, the defendants searched the wrong house. They recovered no marijuana or other contraband from the search of the Richardsons' home. They made no arrests and no prosecutions resulted from the search. The following month, Harrison County officers searched another of the four homes located at Route 3, Box 628. This time they apparently picked the correct house, found some marijuana, and made an arrest.

*D. The Lawsuit*

Had their consequences been less serious, the events just described might have provided a fitting script for a Keystone Kops comedy. Instead, the defendants soon found themselves facing the Richardsons' lawsuit under 42 U.S.C. § 1983 charging them with assorted constitutional violations in obtaining the warrant and searching the Richardsons' home. The district court, after striking parts of several affidavits submitted by the Richardsons, granted summary judgment for all defendants. We review the district court's evidentiary rulings for abuse of discretion and its granting of summary judgment *de novo,* taking the evidence in the light most favorable to the Richardsons.

II.

Before proceeding to the merits we must satisfy ourselves of our jurisdiction to decide this case. The appellees contend that we lack jurisdiction over defendants Berry and Harrison County. The appellants have not discussed the jurisdictional question and were unprepared at oral argument to respond to the appellees' position. We hold that we have jurisdiction over all three

defendants.

Fed.R.App.P. 4(a)(1) requires that notices of appeal to this Court be filed within thirty days of the entry of judgment in the district court. That thirty-day clock is tolled, however, during the pendency of certain motions under Fed.R.Civ.P. 59. One such Rule 59 motion is the motion to alter or amend a judgment,[5] of which one variety is the "motion for reconsideration".[6] The filing of a motion for reconsideration has two effects: First, any notice of appeal is a nullity if it is filed before the district court rules on the motion for reconsideration,[7] and second, the thirty-day clock for filing a notice of appeal to this Court does not begin to run until the district court rules on the motion for reconsideration.[8]

The district court entered summary judgment in favor of all the defendants in this case on December 16, 1992. On December 28, 1992, the Richardsons filed a timely motion for reconsideration of the district court's judgment as to defendant Tommy Harrell.[9] The

---

[5]Fed.R.Civ.P. 59(e).

[6]*See, e.g., Charles L.M. v. Northeast Indep. Sch. Dist.,* 884 F.2d 869, 870 (5th Cir.1989); *Benson v. Bearb,* 807 F.2d 1228, 1229 (5th Cir.1987) (per curiam).

[7]"A notice of appeal filed before the disposition of any of the above motions [including Rule 59 motions] shall have no effect". Fed.R.App. P. 4(a)(4); *see, e.g., Treuter v. Kaufman County, Tex.,* 864 F.2d 1139, 1142 (5th Cir.1989).

[8]Fed.R.App. P. 4(a)(4); *see, e.g., Harrell v. Dixon Bay Transp. Co.,* 718 F.2d 123, 126-27 (5th Cir.1983).

[9]Although served 12 calendar days after the entry of judgment, this motion was nonetheless served within the ten days required by Fed.R.Civ.P. 59(e), because of the requirement of Fed.R.Civ.P. 6(a) that intervening weekends be excluded from the calculation. Because the motion was served within ten days, we

district court denied their motion on January 15, 1993. The Richardsons did not file a motion for reconsideration of the district court's judgment as to defendants Berry or Harrison County. The Richardsons filed their notice of appeal to this Court on February 5, 1993—within thirty days after the denial of their motion for reconsideration, but more than thirty days after the entry of judgment on December 28, 1992.

Berry and Harrison County contend that because they were not named in the Richardsons' motion for reconsideration the thirty-day clock for taking an appeal was never tolled as to them, and therefore this Court lacks jurisdiction over the Richardsons' appeal of the summary judgment in Berry and Harrison County's favor. We disagree.

As noted above, a timely motion for reconsideration vitiates any notice of appeal filed while the motion for reconsideration is still pending in the district court. While their motion for reconsideration as to Harrell was pending, the Richardsons could not have appealed the district court's ruling as to Berry and Harrison county to this Court. The appellees ask us to conclude that the Richardsons waived their right to appeal the district court's adverse rulings as to Berry and Harrison County by failing to include Berry and Harrison County in their motion for reconsideration. We decline to do so. Filing a Rule 59 motion is

---

will treat it as a motion under Rule 59. *See Goodman v. Lee,* 988 F.2d 619, 622-23 (5th Cir.1993) (per curiam). We note for counsel's benefit, however, that the newly revised Fed.R.Civ.P. 59(e) requires *filing,* not merely *serving,* the motion within ten days. *See* 150 F.R.D. 399.

not a prerequisite to taking an appeal,[10] as the appellees would have us hold.

The rule we state today is a simple one and is consistent with our Court's precedents even though none of them stated it explicitly. We hold that a timely Rule 59(e) motion for reconsideration of a judgment as to one defendant tolls the thirty-day clock for taking an appeal not only as to that defendant, but also as to all other defendants whose liability was determined in the judgment the plaintiff's Rule 59(e) motion seeks to amend.[11] Accordingly, the Richardsons' Rule 59(e) motion as to Harrell tolled the appeal clock not only as to Harrell, but also as to Berry and Harrison County. Therefore, their appeal as to all three defendants was timely filed, and we have jurisdiction to hear it.

III.

We turn next to the district court's evidentiary rulings. The district court's summary judgment for the defendants was based on a summary judgment record from which much of the plaintiffs' evidence had been excluded. Our review of the district court's evidentiary rulings has persuaded us that errors were committed, but none were of such magnitude as to have affected the substantial

---

[10]*See* 6A James W. Moore & Jo D. Lucas, Moore's Federal Practice ¶ 59.14 (2d ed. 1993).

[11]We have previously held, without explicit discussion of the matter, that a plaintiff's motion for reconsideration as to one defendant tolled the appeals clock even as to defendants not named in the motion. *See, e.g., Willie v. Continental Oil Co.,* 784 F.2d 706 (5th Cir.1986) (en banc), *dismissing appeal of* 746 F.2d 1041 (5th Cir.1984); *Howell v. Marmpegaso Compania Naviera, S.A.,* 566 F.2d 992 (5th Cir.1978) (per curiam).

rights of the plaintiffs, and the errors were therefore harmless.[12]

*A. Willie and Rose Richardson's Affidavit*

The district court struck two portions of the plaintiffs' affidavit. First, the statement that "Tommy Harrell used unreasonable methods to search their home" was struck as making a legal conclusion.[13] "Mere conclusory allegations are not competent summary judgment evidence,"[14] and the district court was within its discretion to strike them from the Richardsons' affidavit.

Second, the statement that "[b]ased on information and belief, in June 1991, a neighbor's home on their road was searched by Tommy Harrell where marijuana was found" was struck as not based on personal knowledge and therefore failing the requirements of Fed.R.Civ.P. 56(e).[15] While the non-movant's affidavits should not be held to as strict a standard as those of the movant for summary judgment,[16] we find no abuse of the district court's discretion in

---

[12]Fed.R.Civ.P. 61. "[T]he erroneous admission or exclusion of an affidavit that does not meet the Rule 56(e) standard does not require reversal of a summary judgment if the error is harmless". 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 2738, at 468-69 (2d ed. 1983).

[13]811 F.Supp. at 1196.

[14]*Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.), *reh'g denied,* 961 F.2d 215 (5th Cir.), *cert. denied,* 506 U.S. ----, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992); *see also Hanchey v. Energas Co.,* 925 F.2d 96, 97 (5th Cir.1990).

[15]811 F.Supp. at 1196.

[16]"[T]he papers of a party opposing summary judgment are usually held to a less exacting standard than those of the moving party.... In previous cases we have accepted evidence from the party opposing summary judgment despite its failure to meet the technical requirements of Rule 56(e)". *Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.,* 831 F.2d 77, 80 (5th Cir.1987) (citations omitted). *Accord* 10A Wright, Miller & Kane § 2738, at

striking the above quoted statement from the plaintiffs' affidavit.

*B. Willie James Jones's Affidavit*

The district court struck two parts of Willie James Jones's affidavit. First, Jones's assertion that Harrell searched his house without a warrant in the "spring/summer ... of 1991" was struck as insufficiently specific.[17] Fed.R.Civ.P. 56(e) requires that affidavits opposing a summary judgment be specific; the district court did not abuse its discretion in striking the quoted portion of Jones's affidavit.

Second, the following assertion, which appeared verbatim in four other affidavits,[18] was struck as not based on Jones's personal knowledge: "Appearers, due to knowledge in the community, believes that Tommy Harrell uses illegal searches in a misguided effort to discourage illegal drug activity".[19] The district court's ruling would be well taken if Jones was asserting that Harrell *actually used* illegal searches, but Jones's affidavit merely states that *Jones believed* Harrell's tactics were unlawful. Still, any error in striking that portion of the affidavit was harmless, because Jones's statement of his belief that Harrell used illegal tactics had no probative force to prove that Harrell actually did so.

*C. Rick Turner's Affidavit*

The district court struck the affidavit of Rick Turner, the

---

484-86.

[17] 811 F.Supp. at 1196-97.

[18] The same language appeared in the affidavits of Paul Gatson, John Johnson, Odell Beckham, Sr., and Rosa Washington.

[19] *Id.* at 1197.

plaintiffs' expert witness, in its entirety because it was not based on specific facts.[20] Turner described his purported investigation of alleged prior constitutional violations by Harrell, without indicating whose rights were violated or how. No manifest error is evident.[21]

*D. Paul Gatson's Affidavit*

The district court struck two parts of Gatson's affidavit. First, the district court struck the same opinion language that appeared in Willie James Jones's affidavit, discussed in section III.B of this opinion. Second, Gatson stated that his residence was searched without a warrant and that he was not arrested or charged with any crime as a result of the search. The district court struck that statement because public records showed that the search of Gatson's home had in fact been conducted under a warrant and he had in fact been convicted of possession of a controlled substance as a result of the search.[22]

Credibility determinations have no place in summary judgment proceedings.[23] The district court chose to believe the defendants' evidence over the plaintiffs' and that was error. The non-movants' summary judgment evidence must be taken as true.[24] We conclude,

---

[20]811 F.Supp. at 1197.

[21]*Washington v. Armstrong World Indus., Inc.,* 839 F.2d 1121, 1123 (5th Cir.1988).

[22]811 F.Supp. at 1197.

[23]*See Lindsey v. Prive Corp.,* 987 F.2d 324, 327 n. 14 (5th Cir.1993); *Leonard v. Dixie Well Serv. & Supply, Inc.,* 828 F.2d 291, 294 (5th Cir.1987).

[24]*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

however, that the district court's error in striking this part of Gatson's affidavit was harmless.

*E. John Johnson's Affidavit*

The two portions of Johnson's affidavit the district court struck were substantially identical with the portions stricken from Jones's affidavit, discussed in section III.B.

*F. Bessie Wright's Affidavit*[25]

The district court struck Bessie Wright's affidavit because it had been notarized by plaintiffs' counsel who, the district court said, was ineligible to serve as a notary because of a financial interest in the outcome of the lawsuit.[26] The only authority the district court cited for that unusual proposition, however, was a Texas state case that plainly does not enunciate the rule the district court applied.[27]

The district court erred in striking Wright's affidavit. The question whether an affidavit is competent summary judgment evidence begins and ends with the requirements of Fed.R.Civ.P.

---

[25]The district court's opinion, 811 F.Supp. at 1198, refers to this affiant as "Betsy Wright". We have corrected the spelling of Ms. Wright's name to that provided by the appellants.

[26]811 F.Supp. at 1198.

[27]*Chambers v. Terrell,* 639 S.W.2d 451 (Tex.1982) (per curiam).

> *We are not to be understood as approving the holding of the Court of Appeals* that the affidavit ... was void because the attorney who acted as the notary to take the affidavits had a "strong financial and beneficial interest." Among other things, no financial interest appears in the record. The point is reserved.

*Id.* at 452 (emphasis added).

56(e). Regardless of what the rule is in Texas state courts, the district court may not hold the plaintiffs to it. An affidavit is not incompetent summary judgment evidence merely because plaintiffs' counsel notarized it. Weighing all the circumstances, we hold that the district court's error in striking Wright's affidavit was harmless.

*G. Odell Beckham, Sr.'s Affidavits*

The district court struck two portions of Beckham's first affidavit which were substantially identical to the portions stricken from Jones's,[28] previously discussed.

The district court struck Beckham's second affidavit in its entirety because it was notarized by plaintiffs' counsel. As in the case of Wright's affidavit, the district court's error in striking Beckham's affidavit was harmless.

*H. Debra Geary and Alan Geary's Affidavits*

The district court struck both affidavits in their entirety because they did not state facts with the specificity required by Fed.R.Civ.P. 56(e). We find no abuse of the district court's discretion.

*I. Rosa Washington's Affidavit*

The district court struck two portions of Washington's affidavit which were substantially identical to the portions stricken from Jones's.[29] Our analysis of the admissibility of Jones's affidavit applies.

Having concluded that the district court committed only

---

[28]811 F.Supp. at 1198.

[29]811 F.Supp. at 1198.

harmless error in its evidentiary rulings, we proceed at last to the merits of the plaintiffs' claim.

IV.

*A. The "Heightened Pleading" Issue*

The district court based its decision, in part, on the Richardsons' failure to meet the "heightened pleading" standard this Court established in *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*[30] and *Elliott v. Perez.*[31] The Supreme Court reversed our *Leatherman* decision and held that no heightened pleading standard may be required of plaintiffs' § 1983 claims against municipalities.[32] The Supreme Court's *Leatherman* holding disposes of the heightened pleading question as against defendants Berry and Harrison County. Defendant Harrell, however, presents us with the question *Leatherman* expressly reserved, namely whether a heightened pleading standard is still permissible when the plaintiff sues not a municipality but an individual government official.[33]

We decide this case without reaching the "heightened pleading" question as to individual government officials. Rather, we conclude only that the Richardsons have not met their summary

---

[30]954 F.2d 1054 (5th Cir.1992), *rev'd,* 507 U.S. ----, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

[31]751 F.2d 1472, 1479 (5th Cir.1985).

[32]*Leatherman,* 507 U.S. at ----, 113 S.Ct. at 1163, 122 L.Ed.2d at 524.

[33]"We thus have no occasion to consider whether our qualified immunity jurisprudence would require a heightened pleading in cases involving individual government officials". *Leatherman,* 507 U.S. at ----, 113 S.Ct. at 1162, 122 L.Ed.2d at 523.

judgment burden of raising a genuine dispute as to any question of material fact.  A case will inevitably arise that will force us to assess the impact of the Supreme Court's *Leatherman* reasoning on our *Elliott v. Perez* precedent, but this is not that case.

*B. Defendant Harrell and the "Qualified Immunity" Question*

The Richardsons have sued Harrell in his individual capacity. "Qualified immunity cloaks a police officer from personal liability for discretionary acts which do not violate well-established law".[34] Harrell has qualified immunity if his actions "could reasonably have been thought consistent with the rights [he is] alleged to have violated".[35]

We conclude that the district court was correct in holding that the Richardsons have not overcome Harrell's qualified immunity.  The Richardsons have met the threshold requirement of alleging a violation of a constitutional right.[36]  They have not succeeded, however, in showing that Harrell could not have reasonably believed that his search was lawful.[37]  To make that showing, the plaintiffs must show that the illegality of the challenged conduct was clearly established in factual circumstances

---

[34]*Streetman v. Jordan,* 918 F.2d 555, 556 (5th Cir.1990) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)), *reh'g denied,* 923 F.2d 851 (5th Cir.1991).

[35]*Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987).

[36]*See Siegert v. Gilley,* 500 U.S. 226, ----, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277, 284 (1991), *reh'g denied,* 501 U.S. ----, 111 S.Ct. 2920, 115 L.Ed.2d 1084 (1991); *Quives v. Campbell,* 934 F.2d 668, 670-71 (5th Cir.1991).

[37]*Anderson,* 483 U.S. at 641, 107 S.Ct. at 3039-40.

closely analogous to those of this case.[38]  The question before this Court, then, is whether the illegality of a search based on a warrant containing a description that fitted two adjacent houses was so clearly established that Harrell could not reasonably have believed his search was lawful.

The legality of a warrant is determined in light of the information available to police officers at the time they obtained it.[39]  If at that time Harrell knew or should have known that there were two houses at Route 3, Box 628 fitting the description given in the warrant, he would have been obligated to specify in the warrant which house was to be searched,[40] and the search in this case would have been unlawful.  At the time Harrell obtained the warrant, it is not clear that he knew the description of the property in the warrant fit *two* houses at Route 3, Box 628.  Nor will we conclude that he *should* have known, given that the letter designations "A" through "D" which differentiated the houses were

---

[38]*See White v. Taylor,* 959 F.2d 539, 545-56 & n. 5 (5th Cir.1992);  Karen M. Blum, *Qualified Immunity:  A User's Manual,* 26 Ind.L.Rev. 187, 199-202 (1993).

[39]*Maryland v. Garrison,* 480 U.S. 79, 85-86, 107 S.Ct. 1013, 1017-18, 94 L.Ed.2d 72 (1987).  This case upheld the validity of a warrant issued to search the entire third floor of an apartment building, in the mistaken belief that only one apartment was located on that floor.  While executing the warrant, the officers discovered that the third floor included more than one apartment.  Because the information available to them at the time the warrant was issued suggested that only one apartment was on the third floor, however, the Court upheld the search of the respondent's apartment even though the warrant did not specify that his was the apartment to be searched.

[40]*See id.* at 85, 107 S.Ct. at 1017;  *United States v. Mueller,* 902 F.2d 336, 342 & n. 2 (5th Cir.1990).

not visible from the street.[41]  In short, Harrell's search was lawful, so he could reasonably have believed his search was lawful, and for that reason he is entitled to qualified immunity.  We uphold the district court's summary judgment for Harrell.

*C. The Remaining Defendants and a "Municipal Policy or Custom"*

A municipality is liable under § 1983 "only where the municipality *itself* causes the constitutional violation at issue".[42] The violation must be caused by a "municipal policy or custom" consisting of a " "deliberate' or "conscious' choice" "by city policymakers".[43]  This Court has stated that a municipal policy may be established by a persistent pattern of conduct as well as by a formal legal declaration.[44]

---

[41]This conclusion accords with the view of a respected commentator that warrants which "describe[ ] two or more different places which are not owned or occupied by the same individual" should not be "viewed as inherently in violation of the Fourth Amendment".  2 Wayne R. LaFave, Search and Seizure § 4.5(c), at 223 (2d ed. 1987) (footnotes omitted).

[42]*City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989).

Because he is sued in his official capacity, the "municipal custom or policy" requirement protects defendant/appellee Rick Berry as well as Harrison County. *See Johnson v. Moore,* 958 F.2d 92, 94 (5th Cir.1992).

[43]*Harris,* 498 U.S. at 385, 389, 109 S.Ct. at 1202-03, 1205 (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483-84, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986) (plurality opinion); *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 824, 105 S.Ct. 2427, 2436-37, 85 L.Ed.2d 791 (plurality opinion), *reh'g denied,* 473 U.S. 925, 106 S.Ct. 16, 87 L.Ed.2d 695 (1985)).

[44]In *Bennett v. City of Slidell,* 735 F.2d 861, 862 (5th Cir.1984) (en banc), *cert. denied,* 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985), we defined "official policy" as:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official

In this case the Richardsons contend that Berry and Harrison County had an unstated custom of failing to prevent Harrell from committing unconstitutional acts and failing to discipline him after he did so. The essence of their argument is that Harrell was a "loose cannon" who was permitted to engage freely in illegal searches and seizures without supervision.

Although we must view the evidence in the light most favorable to the plaintiffs as the non-movants for summary judgment, we are unable to discern in the record any evidence of a longstanding pattern of repeated constitutional violations by Harrell, except for the plaintiffs' conclusory assertions that such a pattern existed. We do not find evidence in the record of even one unconstitutional action by Harrell. Absent proof of a pattern of constitutional violations, there is no basis for imposing liability on Berry and Harrison County for failing to prevent them. We agree with the district court that the Richardsons have produced insufficient evidence of any municipal custom or policy to survive summary judgment for the defendants.

We AFFIRM the district court's judgment.

---

to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.