IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-20805

Summary Calendar
_____


ALEX MELVIN WADE, JR

                              Plaintiff - Appellant

        v.

FARMERS INSURANCE GROUP

                              Defendant - Appellee


_____

Appeal from the United States District Court
for the Southern District of Texas
No. H-96-CV-3409
_____
June 26, 2002

Before KING, Chief Judge, and DAVIS and EMILIO M. GARZA, Circuit
Judges.

PER CURIAM:[*]

    Plaintiff-Appellant Dr. Alex Melvin Wade, Jr. appeals the

district court's refusal to reconsider its dismissal for lack of

prosecution of Wade's civil action alleging breach of contract

and a civil rights violation by his insurer.  For the following

_____

    [*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

reasons, we DISMISS the appeal for lack of subject matter jurisdiction.

## I. FACTUAL AND PROCEDURAL HISTORY

On October 11, 1992, pro se Plaintiff-Appellant Dr. Alex Melvin Wade, Jr. was a passenger in a car that allegedly struck a deer on an Indiana highway. On or about December 8 or 9, 1992, Dr. Wade filed a personal injury claim with his insurer, Farmers Texas County Mutual Insurance Company ("Farmers Texas"). On June 2, 1993, Farmers Texas denied that claim.

On October 11, 1994, as a pro se litigant, Dr. Wade filed in Indiana state court what may be construed as a breach of contract action against Defendant-Appellant Farmers Insurance Group ("Farmers").[2] Wade subsequently amended his pleadings to include an apparent claim that Farmers violated his civil rights pursuant to 28 U.S.C. § 1983 (1994).[3] On November 8, 1994, defendant Farmers removed Wade's action to federal district court in

---

[2]  Farmers Texas indicates that it was improperly designated as "Farmers Insurance Group" when named as defendant to this action. That error was never successfully corrected by Wade, and Farmers Texas defended the action throughout its course. The Defendant-Appellant to this action will thus be referred to henceforth in this opinion as "Farmers."

[3]  Neither of Dr. Wade's original or amended complaints expressly indicate any causes of action per se; his complaints do not include the phrase "breach of contract" or refer expressly to a § 1983 violation of his civil rights. In later filings, Wade refers to his action as one for breach of contract and also indicates that he believes a contract right is a "basic civil right." In accord with the leniency with which courts view pro se pleadings, however, the Indiana district court properly inferred such causes of action.

2

Indiana on diversity grounds.  On August 9, 1995, the Indiana

district court granted Farmers's motion <u>both</u> to dismiss the

action for lack of personal jurisdiction over Texas defendant

Farmers <u>and</u>, "alternatively," to transfer the action to a

district court in Texas.[4]  Wade subsequently appealed that

decision to the Court of Appeals for the Seventh Circuit.  On

August 30, 1996, the Seventh Circuit denied jurisdiction over

Wade's appeal on the ground that an order <u>both</u> to dismiss an

action <u>and</u> to transfer it is interlocutory and unappealable.[5]  In

light of that Seventh Circuit decision, the Indiana district

court entered an order transferring Wade's action to the District

Court for the Southern District of Texas, Houston Division, on

October 1, 1996.

To complicate matters, on or about September 27 or 29, 1996,

just a few days prior to the transfer of Wade's civil action to

the district court in Texas, Wade was arrested and incarcerated

---

[4]   The Indiana district court determined that it could not
exercise long-arm personal jurisdiction over Texas defendant
Farmers.  The court further indicated that the question of
whether Wade had a viable claim for a civil rights violation by
Farmers under § 1983, as well as some pretrial motions filed by
the parties, remained pending upon grant of the motion to
transfer the action to the district court in Texas.

[5]   The Seventh Circuit indicated that, if the Indiana
district court had issued an order only dismissing Wade's action
that was not coupled with the transfer, such an order would be
final and appealable.  <u>See</u> <u>Wade v. Farmers Ins. Group</u>, No. 94 C
1863, slip. op. at 6 & n.6 (7th Cir. Aug. 30, 1996).

3

in Indiana on an unrelated criminal matter.[6]  Wade was subsequently extradited to Texas on or about January of 1997. Wade has remained incarcerated in various Texas prison facilities pursuant to that unrelated criminal matter since 1997.[7]

On March 28, 1997, the Texas district court held a pre-trial scheduling conference in the transferred civil action, but Wade failed to appear.  On March 31, 1997, the Texas district court issued an order demanding that Wade show cause within ten days as to why his civil action should not be dismissed for failure to prosecute because there had been no activity in the action in the six months since the action was transferred from Indiana and because Wade failed to appear at the scheduling conference.[8]  The

---

[6]  Wade's various filings indicate those two different dates for his initial incarceration in Indiana.

[7]  The record is not clear regarding the subject of Wade's incarceration, regarding the exact date of Wade's extradition to Texas, or regarding specific dates that Wade entered various Texas penal facilities.  Wade indicates that he was extradited to Texas in January of 1997 and convicted in Texas on April 30, 1997.  Various filings by Wade indicate that Wade has been housed at several Texas penal facilities.

[8]  An order setting the time and place of the conference was issued by the Texas district court on February 20, 1997.  The district court noted that defendant Farmers was represented at the conference.  Wade claims in various subsequent filings that Farmers was fully aware at the time of the March 1997 hearing that Wade was incarcerated and thus unfairly failed to notify the court of this fact.  The record on appeal fails to corroborate or contradict Wade's assertion that Farmers was fully aware, but failed to inform the court, of Wade's incarceration during the six months after transfer of the action, at the time of the pre-trial conference, and when the court dismissed the action in May of 1997.

4

district court indicated that it would dismiss the action if Wade failed timely to show cause. Wade failed timely to respond, and on May 12, 1997, the Texas district court dismissed Wade's civil action without prejudice for failure to prosecute. Wade filed no direct appeal of this dismissal for failure to prosecute.

Wade's first attempt to challenge the district court's dismissal of his action for failure to prosecute in the proper Texas forum occurred on January 24, 2001 -- approximately two and three-quarters years after the May 1997 dismissal -- when Wade filed a motion to vacate judgment pursuant to Rule 60(b)(4) of the Federal Rules of Civil Procedure ("FRCP").[9] Wade argued in

---

[9] Between the March 1997 dismissal and Wade's next attempt to proceed in the Texas district court, the record reflects the following events. In November of 1997, Wade mailed a notification to the Texas district court that Wade's address had changed to a prison facility in Huntsville, Texas. Because Wade mistitled his action (although the handwritten document clearly includes Wade's full name, "Alex Melvin Wade, Jr."), the Texas district court clerk was apparently unable to file the address change with the correct record in this action. Thus, no notification that Wade's action was dismissed was transmitted to Wade in 1997. In a letter to the Texas district court dated August 27, 1998, Wade indicated his address as a state prison facility in Jacksboro, Texas and requested notification of the name and address of defense counsel. Wade also indicated in that August 1998 letter his "intent to seek a re-opening of the case if closed and to pursue the matter under Rule 60(b) of the Federal Rules of Civil Procedure ...." In response, on September 2, 1998, the Texas district court clerk mailed to Wade a copy of the docket sheet that indicated dismissal of his case by the Texas district court in March 1997. On September 28, 1998, within one month of being sent that docket sheet, Wade filed a Rule 60(b)(4) motion, but did so in the wrong forum, the Indiana district court. That motion was denied by the Indiana district court on October 16, 1998. Wade's subsequent Rule 60(b)(4) motion made to the proper forum of the Texas district court came approximately twenty-eight months after the docket was mailed to

5

that motion, <u>inter alia</u>, that his action should not have been dismissed for failure to prosecute because in March 1997 -- at the time of the hearing at which he failed to appear and of the subsequent dismissal of the action -- Wade had a legal "disability" due to his incarceration and preoccupation with defending pro se against the unrelated criminal prosecution, as well as due to his failure to receive notice of the pending dismissal of his civil action.[10]  Rule 60(b) requires that a movant file within a "reasonable" time period for a motion to be timely.  <u>See</u> FED. R. CIV. P. 60(b).[11]  On March 1, 2001, the Texas district court denied Wade's Rule 60(b)(4) motion as untimely based on the court's finding that, despite Wade's incarceration, the time period between the March 1997 dismissal and Wade's

---

him by the Texas court clerk in September 1998.

[10]  Rule 60(b)(4) allows for "Relief from Judgment or Order" upon a showing that a judgment is "void."  FED. R. CIV. P. 60(b)(4).

[11]  Rule 60(b) includes six subsections delineating grounds for relief from a judgment.  The rule indicates that, while movants must file within a "reasonable" time period, for motions filed under subsections (1), (2), and (3) -- unlike Wade's subsection (4) filing -- that reasonable time period is limited to "not more than one year after the [underlying] judgment, order or proceeding" challenged by the motion.  <u>See</u> FED. R. CIV. P. 60(b)(4).  Thus, Rule 60(b) suggests on its face that any motion <u>not</u> filed under its subsections (1), (2), or (3), such as Wade's, might be reasonably and timely filed even if filed more than one year after the underlying order challenged by the motion, depending on the circumstances.

6

January 2001 filing of the Rule 60(b)(4) motion in Texas district court challenging that dismissal was unreasonable.[12]

Because Wade filed no direct appeal to this court of the district court's March 1997 order dismissing his claim for failure to prosecute, the only remaining avenue of challenge available to Wade was to attack the district court's March 1, 2001 denial for lack of timeliness of his Rule 60(b)(4) motion. On March 12, 2001, Wade filed his "Plaintiff's Motion for Reconsideration and Rehearing Pursuant to Title 28 U.S.C. FRAP 4(a)(b) [sic]," challenging the district court's March 1 denial of his Rule 60(b)(4) motion.[13]  On May 2, 2001, the Texas district court denied that motion.  The district court reasoned

---

[12]  The court noted that, although it was unfortunate that a notice of the March 1997 order for Wade to show cause was mailed to Wade's last known address in Indiana-- and thus returned to the Texas court unopened for failure of delivery -- it is the responsibility of even incarcerated litigants to inform the court of a change of address.  The court further noted that Wade's Rule 60(b) motion filed in the proper forum in January 2001 came twenty-eight months after his August 1998 letter indicating his "intent" to file a Rule 60(b) motion and after the Texas court clerk mailed Wade a docket sheet.  In its March 1, 2001 order, the Texas district court did not refer to, or discuss, Wade's filing of a Rule 60(b) motion with the Indiana district court on September 28, 1998 -- albeit in the wrong forum but within one month of the docket being mailed to Wade in prison -- as any factor that might mitigate the lengthy period it took Wade to file his January 2001 motion in the Texas district court.

[13]  Wade also filed an affidavit on March 16, 2001, outlining his alleged "legal disabilities," as well as a copy of the Rule 60(b) motion he filed in the Indiana district court in September of 1998.

7

that Wade failed to show "good cause" for reconsideration of its March 1 order denying Wade's Rule 60(b)(4) motion as untimely.

On May 7, 2001, Wade filed a notice of appeal ("NOA") to this court. On May 10, 2001, Wade filed in the district court both a motion to withdraw that NOA and a motion pursuant to FRCP Rule 59(e) to correct, amend, and/or alter the district court's judgment. On June 18, 2001, the district court denied Wade's Rule 59(e) motion of May 10 and granted his motion to withdraw his May 7 NOA. On June 21, 2001, the clerk of this court mailed to Wade notification indicating that, because the district court granted his motion to withdraw his May 7 NOA, no appeal by Wade was, or would be, docketed in his case pursuant to that NOA.

On June 25, 2001, Wade filed in the Texas district court a "Motion to Clarify Order of June 18, 2001." The district court denied that motion on July 23, 2001, indicating that its June 18 denial of Wade's May 10 Rule 59(e) motion required no clarification. On July 31, 2001, Wade filed a second NOA[14] to

_____

[14] The second NOA in the record on appeal carries a stamp indicating that the clerk of this court received it on July 31, 2001. Pursuant to the so-called "prison mailbox rule," certain filings by prisoner litigants such as Wade are deemed filed for the purposes of jurisdiction upon submission by the prisoner of the filing to the prison mailing system. See, e.g., FED. R. APP. P. 4(c) (codifying the prison mailbox rule as to filings of notices of appeal). Several of our sister circuits have extended this mailbox rule to filings of Rule 59(e) motions. See, e.g., Thompson v. Rasberry [sic], 993 F.2d 513, 515 n.3 (5th Cir. 1993) (per curiam) ("Other courts have extended the bright line mailbox rule ... to contexts outside notices of appeal.") (citing Smith v. Evans, 853 F.2d 155 (3d Cir. 1988) (applying the mailbox rule to a Rule 59(e) motion)) (citations omitted). Wade's NOA

8

this court.[15]  For the following reasons, we find that Wade

failed to file a timely NOA to this court and thus that we lack

jurisdiction over this appeal.

## II.  LACK OF TIMELY NOTICE OF APPEAL

Wade failed to file a timely notice of appeal to this court.

For this court to have jurisdiction over an appeal of a civil

case, FRAP Rule 4(a) requires that an appellant file an NOA to

this court within thirty days of the underlying district court

judgment challenged on appeal, FED. R. APP. P. 4(a)(1)(A), unless

the appellant obtains permission from the district court to

extend the time to file the NOA up to a maximum of thirty

---

indicates that he may have submitted the document for filing as early as July 28, 2001.  We need not determine in this case whether the mailbox rule applies to Wade's filing because whether Wade filed his NOA on July 28 or July 31 does not impact our determination that the only pending NOA was not timely filed based on either of those dates.

[15]  Wade's brief on appeal to this court does not clearly indicate the subject of his appeal.  However, in accord with the leniency that this court affords pro se litigants, we infer that Wade attempts to appeal the district court's March 1, 2001 denial (as untimely) of Wade's January 2001 Rule 60(b)(4) motion that challenged the earlier dismissal of his action for lack of prosecution.  Wade also appears to argue that the district court's March 1997 dismissal of his action for lack of prosecution was improper.  However, appeal of that underlying dismissal can never properly be before this court because Wade filed no notice of direct appeal as to that dismissal and is now time-barred from so doing.

Farmers failed to file a brief in response to Wade's appeal, claiming that it could not determine the issues for appeal from Wade's brief and alternatively requesting additional time to file a response, if so directed by this court.  Regardless, because we find that Wade failed to timely file a notice of appeal so that we lack jurisdiction over the instant appeal, we find it unnecessary to require response briefing from Farmers.

9

additional days.  FED. R. APP. P. 4(a)(5).[16]  However, the filing of certain motions to the district court, including a motion for relief under FRCP rule 59(e), will toll the time period for the filing of the NOA until the disposition of the Rule 59(e) motion by the district court.  See FED. R. APP. P. 4(a)(4)(A)(iv) (1998).  In this case, the NOA that Wade filed on July 31, 2001, unquestionably did not fall within the FRAP Rule 4(a) thirty-day time limit for filing the NOA after the district court's order of March 1 denying Wade's Rule 60(b)(4) motion.  Wade filed the second NOA almost 150 days after that March 1 denial of the Rule 60(b)(4) motion.  Consequently, the only hope procedurally for Wade's appeal is that the motions he filed subsequent to March 1, 2001 tolled the time period for him to timely file an NOA.

### A.  Wade's "Motion for Reconsideration and Rehearing Pursuant to Title 28 U.S.C. FRAP 4(a)(b)"

On March 12, 2001, Wade filed his "Motion for Reconsideration Pursuant to Title 28 U.S.C. FRAP 4(a)(b)."  No such motion exists within either the rules of federal civil procedure pertaining to trials or the rules of appellate procedure.  Indeed, no motion to "reconsider" exists per se within the FRCP.  Courts, including this one, commonly construe motions "to reconsider" as either motions for relief pursuant to FRCP Rule 59(e) or pursuant to FRCP Rule 60(b).  This court

---

[16]  The record indicates no such request made by Wade to the district court for any extension of time to file any NOA.

10

construes a "motion to reconsider" filed within ten days of the underlying judgment that it challenges as a motion for relief under FRCP Rule 59(e), with the attendant benefit that such a motion tolls the time period for filing of an NOA to this court. See, e.g., Richardson v. Oldham, 12 F.3d 1373, 1377 & n.9 (5th Cir. 1994). Because interim weekend days are not counted by this court against the ten-day time period for timely filing of a Rule 59(e) motion, see id. (citing FED. R. CIV. P. 6(a)), Wade's March 12 motion is considered to be made within ten days of the underlying March 1 judgment for the purposes of Rule 59(e).[17] We thus consider the motion as one made for relief under Rule 59(e) that tolled the time for Wade to file an NOA until thirty days after the disposition of the motion.[18]

## B. After Disposition of the First Rule 59(e) Motion

Disposition of Wade's March 12 Rule 59(e) motion to reconsider occurred on May 2, 2001 when the district court denied that motion. Such disposition triggered the requirement that within thirty days -- i.e., by June 2, 2001 -- Wade either file

---

[17] March 10 and 11, 2001, fell on Saturday and Sunday.

[18] Because of the 1993 amendment of FRAP 4(a)(4), it is inconsequential in this case whether we construe Wade's March 12 motion as one under Rule 60(b) or Rule 59(e). The applicable amended rule indicates that either a timely Rule 59(e) motion, or a Rule 60(b) motion filed within ten days of a judgment, will toll the time for filing of an NOA. See FED. R. APP. P. 4(a)(4). Thus, the only relevant determination for the purposes of our jurisdiction over this appeal is that the motion for reconsideration was filed within ten days of the March 1 judgment pursuant to either rule.

11

an NOA or request an extension to file from the district court. Successive motions for relief under Rule 59(e) will not again toll the time period for the filing of an NOA unless the district court grants the motion to alter or amend the judgment.  See Trinity Carton Co., Inc. v. Falstaff Brewing Corp., 816 F.2d 1066, 1069 (5th Cir. 1987) (citing Wansor v. George Hantscho Co., Inc., 570 F.2d 1202, 1206 (5th Cir. 1978)); Wages v. Internal Revenue Serv., 915 F.2d 1230, 1233-34 & n.3 (9th Cir. 1990) ("[A]ny other rule would effectively give a disgruntled litigant the ability to stretch the period for appeal indefinitely."). Consequently, Wade's second motion to alter the judgment under Rule 59(e), made on May 10, did not relieve him of his obligation to file a timely effective NOA within thirty days from the May 2 denial of his first Rule 59(e) motion for reconsideration.

On May 7, 2001, Wade did timely file his first NOA to this court, but he subsequently filed a motion to withdraw that NOA on May 10, 2001, at the same time that he filed his second Rule 59(e) motion.  Wade's motion to withdraw his first May 7 NOA was granted by the district court on June 18, at the same time the court denied the second Rule 59(e) motion.  Wade did not file the second NOA for the instant appeal until July 28, 2001, earliest, almost two full months past the June 2 deadline for Wade to file an NOA to appeal the judgment denying his Rule 60(b)(4) motion based on the May 2 disposition of Wade's first Rule 59(e)

12

motion.[19]  Wade's July 31 NOA is thus untimely.  Consequently, we have no alternative but to conclude that we lack jurisdiction over Wade's appeal.

### III.  CONCLUSION

For the foregoing reasons, we DISMISS Wade's appeal for lack of jurisdiction.

---

[19]  On June 25, 2001, Wade filed his "Motion to Clarify" the district court's June 18 order denying his second Rule 59(e) motion, apparently believing that such motion would toll his thirty-day time to file notice of appeal from the date of the June 18 order.  However, Wade's belief fails to apprehend that the successive Rule 59(e) motion would not toll his time to file the NOA past the June 2 deadline.  Moreover, no such motion to clarify exists formally within the FRCP or is recognized as a motion that might toll the period for the timely filing of an NOA pursuant to FRAP Rule 4(a)(4) under any circumstance.  That motion, therefore, has no effect on our determination that we lack jurisdiction over the instant appeal.  We further note that Wade's second July 31 NOA was also filed approximately forty days after the district court granted his withdrawal of the first NOA on June 18, 2001.