# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-30480

United States Court of Appeals
Fifth Circuit

**FILED**

September 14, 2018

Lyle W. Cayce
Clerk

KANSAS CITY SOUTHERN RAILWAY COMPANY,

Plaintiff–Appellant Cross–Appellee,

v.

DSK LIMITED; DEWEY S. KENDRICK, III; PRAETORIAN INSURANCE COMPANY; 3 V PARTNERSHIP; STEVEN D. VINSON; DONNA SMITH VINSON; STEVEN B. VINSON; AMERICAN RELIABLE INSURANCE COMPANY,

Defendants–Appellees Cross–Appellants.

Appeals from the United States District Court
for the Western District of Louisiana
USDC No. 1:13-CV-2157

Before REAVLEY, OWEN, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

This case arises out of the derailment of a Kansas City Southern Railway Co. (KCS) train at a private crossing after the rails at the crossing were damaged by heavy equipment being used to service property controlled by DSK Limited, 3-V Partnership, and the individual defendants (collectively, the

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-30480

Landowners).  Applying Louisiana law, the district court granted summary judgment in favor of the Landowners and their insurance companies, determining that the Landowners were not vicariously liable for the actions of a third-party operator who caused the damage and that they owed no duty to KCS.  It denied summary judgment on the issue of lost profits, but, because the Landowners were not vicariously liable and did not owe KCS any duty, it dismissed KCS's claims against all defendants.  Cross appeals followed.  We affirm.

## I

Dewey S. Kendrick is the managing partner of DSK, which owned a tract of farmland subject to KCS's right of way.  Steven Vinson is the managing partner of 3-V, which leased the land from DSK for farming purposes.  The property can be accessed only by a private road that traverses the railroad tracks.  This private road is maintained exclusively by 3-V under the terms of its lease with DSK.  KCS maintains its tracks.  It posted a sign at the private crossing that read "REPORT PROBLEM OR EMERGENCY" and that listed its phone number.  DSK and 3-V had previously moved low-clearance vehicles and farm equipment across the private crossing, which sloped up to the tracks.

Precision Land Leveling (Precision) performed significant land leveling work on an adjacent property, also leased by 3-V.  Vinson contacted DSK to inquire about having Precision perform relatively minor maintenance work on the private road on the DSK property, estimated to take about thirty minutes.  DSK consented to the work, which required land-leveling equipment to traverse the tracks at the private crossing.  Precision agreed to do the "small job" as a favor because 3-V was a "good customer."  There was no separate contract for the work on the DSK property, no agreement that there would be payment, and no exchange of compensation after the work was completed.  On

2

the morning of the derailment, Vinson showed a Precision operator where to obtain dirt for the work and what work needed to be done.

To perform the work on the DSK property, Precision used long, heavy scrapers that allowed the tractor operator to raise or lower the scraper. A scraper blade that was not raised high enough caught on and displaced one of the rails. Within hours of Precision finishing work on the DSK road, a KCS train derailed at the crossing. Neither Vinson, Kendrick, nor any of their employees were present when the work was performed that afternoon. The work was not inspected prior to the derailment.

KCS filed this diversity action against Precision, DSK, 3-V, the individual defendants, and their insurers. KCS settled with Precision and Precision's insurer and pursued its claims against the remaining defendants. KCS asserts claims against the Landowners based on alleged vicarious liability for Precision's acts as well as independent negligence.

The defendants filed motions for summary judgment as to causation, independent contractor status and duty, and vicarious liability. American Reliable, the Landowners' insurer, moved for partial summary judgment on the issue of the inclusion of KCS's lost profits in the damages calculation. KCS moved to strike the affidavits of Vinson and Kendrick. The district court held oral argument on the above motions and, upon taking the matter under advisement, granted summary judgment in favor of the Landowners on the issues of independent contractor status and duty. The court denied summary judgment on causation as moot; denied summary judgment on the issue of vicarious liability; denied summary judgment on the lost profits claims; and granted and denied in part the motion to strike. The court dismissed KCS's claims. Cross appeals followed.

No. 16-30480

## II

We review a district court's evidentiary ruling, including a decision whether to strike an affidavit, for abuse of discretion.[1] If the court determines the district court did abuse its discretion, harmless-error analysis applies.[2] The affidavits of Kendrick and Vinson are based on the personal knowledge of the affiants, are not facially defective,[3] and, at any rate, are merely repetitive of other evidence, including the deposition testimony of the two individuals. Any error in admitting the affidavits would therefore be harmless.[4] Concluding that the court did not abuse its discretion in considering the affidavits and that any potential error would be harmless, we turn to the merits of the district court's grant of summary judgment.

## III

This court reviews a district court's grant of summary judgment de novo.[5] Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law."[6] "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."[7] However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly

---

[1] *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 285 (5th Cir. 2006); *Kelly v. Boeing Petroleum Servs., Inc.*, 61 F.3d 350, 356 (5th Cir. 1995); *Richardson v. Oldham*, 12 F.3d 1373, 1378 (5th Cir. 1994).

[2] FED. R. CIV. P. 61; *Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 581 (5th Cir. 2004).

[3] *See* FED. R. CIV. P. 56(c)(4).

[4] *See Kanida*, 363 F.3d at 581; *Richardson*, 12 F.3d at 1378.

[5] *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 859 (5th Cir. 2004).

[6] *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003) (per curiam) (citing FED. R. CIV. P. 56(c)).

[7] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

4

No. 16-30480

supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."[8]

## IV

## A

Under Louisiana law, "[m]asters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed."[9]  However, "responsibility only attaches[] when the masters or employers . . . might have prevented the act which caused the damage, and have not done it."[10]  "[B]y inquiring into the overall relationship of the parties and the element of control," Louisiana courts have "established reasonable definitions and limitations of vicarious liability."[11]  "It is the [r]ight of control of the time and physical activities in the other party and the existence of a close relationship between the parties which determine that one is a servant."[12]  If the relationship is of contractee and independent contractor, there is generally no vicarious liability.[13]

When neither an independent contractor nor employer-employee relationship exists, a relationship may be characterized as that of principal and agent.[14]  Though a master may be liable for the torts of his servant, and an employer for the torts of his employee, "a principal is not liable for the

---

[8] *Id.* at 247-48.

[9] LA. CIV. CODE ANN. art. 2320.

[10] *Id.*

[11] *Blanchard v. Ogima*, 215 So. 2d 902, 905 (La. 1968).

[12] *Id.*; *see also Hickman v. S. Pac. Transp. Co.,* 262 So. 2d 385, 391 (La. 1972) (noting that when determining "whether a relationship is that of independent contractor or that of mere servant," the "control over the work reserved by the employer" is critical and is judged "not [by] the supervision and control which is actually exercised," but rather by "whether, from the nature of the relationship, the right to do so exists").

[13] *Thompson v. Winn-Dixie Montgomery, Inc.*, 181 So. 3d 656, 665 (La. 2015).

[14] *See Blanchard*, 215 So. 2d at 906 (discussing various employment relationships under Louisiana law).

physical torts of a [n]on-servant agent."[15]  "A non-servant agent contributes to the business of his employer, but he is not such a part of it that his physical acts and the time to be devoted to the business are subject to control."[16]

"In determining whether an employment relationship exists[,] . . . [Louisiana jurisprudence] has uniformly held that the most important element to be considered is the right of control and supervision over an individual."[17]  Louisiana's Supreme Court has considered various factors in assessing control, including "the selection and engagement of the worker, the payment of wages and the power of control and dismissal."[18]  Other cases have relied on the factors set forth in *Hickman* to determine whether the requisite control exists.[19]  We have noted that, though many factors may be considered in assessing the relationship, "no single factor is determinative of an employment or independent contractor relationship."[20]

Mindful that "[t]he element of control that distinguishes an employee from an independent contractor focuses on whether the purported employer had the right to control the method and means by which the individual

---

[15] *Id.*

[16] *Id.* at 907.

[17] *Savoie v. Fireman's Fund Ins. Co.*, 347 So. 2d 188, 191 (La. 1977) (citing *Hickman*, 262 So. 2d 385; *Blanchard*, 215 So. 2d 902).

[18] *Id.*; *Hillman v. Comm-Care, Inc.*, 805 So. 2d 1157, 1162 (La. 2002).

[19] *See Tower Credit, Inc. v. Carpenter*, 825 So. 2d 1125, 1129 (La. 2002) (summarizing the factors as follows: "(1) there is a valid contract between the parties; (2) the work being done is of an independent nature such that the contractor may employ non-exclusive means in accomplishing it; (3) the contract calls for specific piecework as a unit to be done according to the independent contractor's own methods, without being subject to the control and direction of the principal, except as to the result of the services to be rendered; (4) there is a specific price for the overall undertaking agreed upon; and (5) the duration of the work is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach"); *Hughes v. Goodreau*, 836 So. 2d 649, 656 (La. Ct. App. 2002) (applying *Hickman*, 262 So. 2d at 390-91); *Cliburn v. Police Jury Ass'n of La, Inc.*, 770 So. 2d 899, 903-04 (La. Ct. App. 2000) (same).

[20] *Newcomb v. N.E. Ins. Co.*, 721 F.2d 1016, 1019 (5th Cir. 1983).

performed the work tasks,"[21] we conclude that the record cannot support a finding of an employment relationship between the Landowners and Precision that would give rise to vicarious liability.  Despite KCS's strenuous assertions that Vinson exercised (or could have exercised) control over Precision's work, the record belies this characterization.  The record shows that Precision agreed to perform the work for 3-V as a favor before removing its equipment from the area and that Vinson showed a Precision employee where he could obtain dirt and what needed to be repaired.  There is no indication that Vinson did or could have exercised any control over how Precision performed the work, what equipment it dedicated to the task, how Precision's employees would be deployed, or what they would be paid.  Precision was apparently free to use its own judgment and methods, as it saw fit, to repair the road.  Neither Vinson nor any other 3-V or DSK employee was present when the work was done, and KCS does not point to any evidence suggesting the Landowners had any interest in the work except in the result.  KCS has not offered any factual support for its assertion that Vinson could have controlled Precision's employees, their time, or the manner of their performance.[22]  Nor is there any suggestion that the Landowners could have selected or dismissed any of Precision's workers.

It seems clear that, though Precision certainly contributed to the Landowners' business by performing necessary road maintenance, it was "not such a part of it that [its] physical acts and the time to be devoted to the business [were] subject to [the Landowners'] control"[23]   Based on the totality of the circumstances, a reasonable person could conclude only that Precision

---

[21] *Hillman*, 805 So. 2d at 1164.

[22] *See* FED. R. CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986).

[23] *Blanchard v. Ogima*, 215 So. 2d 902, 905 (La. 1968).

No. 16-30480

was an independent contractor or non-servant agent of 3-V and DSK.[24]  Such a relationship cannot support the imposition of vicarious liability as a matter of Louisiana law.

**B**

"[G]enerally, a principal is not liable for the offenses committed by an independent contractor while performing its contractual duties."[25]  Louisiana recognizes two exceptions to this rule.  A principal will be liable for the offenses of an independent contractor (1) "where the work is ultra-hazardous" or (2) "if the principal reserves the right to supervise or control the work of the independent contractor."[26]  "The critical inquiry in determining whether activity is ultrahazardous or inherently dangerous is whether it can be made safe when it is performed in a proper and workmanlike manner."[27]

The evidence indicates that, when properly elevated, the scraper blades posed no danger to the tracks.  KCS has not presented any evidence that crossing with the scrapers properly elevated was unsafe.  KCS argues that Louisiana Revised Statute § 32:174, which requires equipment operators to provide notice before crossing a railroad with certain heavy equipment, indicates the legislature "recognized the inherent danger" in equipment such as that used by Precision when crossing railroads.  However, the traffic regulation applies only to operators of machinery travelling on public roads,

---

[24] *See Newcomb*, 721 F.2d at 1018-19 (determining summary judgment on independent contractor status appropriate when there is no dispute over the powers of control and no contrary signals as to the nature of the relationship, or when a reasonable person "could reach but one conclusion").

[25] *Thompson v. Winn-Dixie Montgomery, Inc.*, 181 So. 3d 656, 665 (La. 2015).

[26] *Id.*

[27] *Sims v. Cefolia*, 890 So. 2d 626, 632 (La. Ct. App. 2004); *accord Buras v. Lirette*, 704 So. 2d 980, 983-84 (La. Ct. App. 1997).

and does not, by itself, indicate that the scrapers could not travel across the tracks safely.

KCS's argument that the Landowners gave "express or implied authorization to an unsafe practice" is also unavailing. The cases KSC cites are distinguishable because they concern an owner or principal knowingly authorizing, instructing, directing, or permitting the independent contractor to engage in an unsafe practice.[28] There is no evidence that the Landowners authorized or otherwise directed Precision to operate the machinery unsafely.[29] We therefore agree with the district court that KCS cannot, as a matter of law, sustain its theory of vicarious liability.

## V

KCS alternatively asserts the Landowners' independent negligence as a basis for liability. Under Louisiana law, "[t]he threshold issue in any negligence action is whether the defendant owed the plaintiff a duty, and whether a duty is owed is a question of law."[30]

Louisiana imposes a general duty of care under Louisiana Civil Code Article 2315.[31] To determine whether a duty is owed, the court asks "whether the plaintiff has any law—statutory, jurisprudential, or arising from general principles of fault—to support his claim."[32] KCS asserts that the Landowners

---

[28] *See, e.g.*, *Alexander v. Lowes Cos.*, 701 So. 2d 239, 243 (La. Ct. App. 1997).

[29] *Cf. id.* (testimony indicated principal may have knowingly authorized independent contractor to operate machinery unsafely and without insurance).

[30] *Milbert v. Answering Bureau, Inc.*, 120 So. 3d 678, 687-88 (La. 2013) (quoting *Hanks v. Entergy Corp.*, 944 So. 2d 564, 579 (La. 2006)) (requiring a plaintiff asserting a negligence claim to prove: "(1) whether the defendant had a duty to conform his conduct to a specific standard of care; (2) whether the defendant's conduct failed to conform to the appropriate standard of care; (3) whether the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) whether the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) whether the plaintiff was damaged").

[31] LA. CIV. CODE ANN. art. 2315(A) ("Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.").

[32] *Maw Enters., L.L.C. v. City of Marksville*, 149 So. 3d 210, 217 (La. 2014) (quoting *Hardy v. Bowie*, 744 So. 2d 606, 614 (La. 1999)).

owed a general duty of care to KCS and had "assumed the duty to employ reasonable safety practices, including providing spotters or notifying KCS of 'problems' so that [KCS] could take appropriate safety precautions including providing certified spotters." KCS also asserts there is a material question of fact as to whether the Landowners are liable to KCS under the theory of *garde* based on unreasonably dangerous conditions of the private road.

The district court rejected each of these bases for a finding of a duty owed to KCS, concluding that the Landowners did not assume a duty to provide spotters and that there was nothing inherently dangerous about the slope of the road. It further concluded that the Landowners had no duty to warn KCS that the equipment would be traversing the tracks. We agree with the district court's well-reasoned opinion.

## A

KCS argues that the Landowners had previously used spotters when crossing the tracks with low-clearance vehicles and therefore had assumed a duty to provide spotters on this occasion as well. Under Louisiana law, a defendant assumes a duty when he "(1) undertakes to render services, (2) to another, (3) which the defendant should recognize as necessary for the protection of a third person."[33]

Here, there is no evidence that the Landowners undertook to provide spotters for KCS, and the cases on which KCS relies are easily distinguishable. In *Harris v. Pizza Hut of Louisiana, Inc.*, the Louisiana Supreme Court held that a "business which undertakes to hire a security guard to protect itself and its patrons is liable for physical harm which occurs because of negligence on the part of that guard."[34] However, the Landowners did not hire spotters, nor

---

[33] *Hebert v. Rapides Par. Police Jury*, 974 So. 2d 635, 643 (La. 2007).

[34] 455 So. 2d 1364, 1369, 1371 (La. 1984) ("Whether this Pizza Hut had a duty to hire security guards is irrelevant.").

is there any allegation that any of the Landowner's employees were present—much less acting negligently—at the time the damage occurred. In *Barnes v. Bott*, a school board was held to have assumed a duty to verify that crossing guards would be present when the board had notified parents that guards would be present and had monitored guard attendance.[35]  Here, the Landowners never indicated to KCS that they would provide spotters, nor is there evidence that KCS was relying on the Landowners to do so. Because the Landowners did not undertake to perform any service for KCS, there can be no assumption of duty.

## B

KCS argues that the slope of the road made Precision's operation dangerous and that the Landowners' duty to maintain the road around the crossing forms a basis for liability to KCS under the Louisiana concept of *garde*, or custody. Under Louisiana law, a person is responsible for damage caused by "things which we have in our custody."[36] "[T]he person who has the garde of a thing shall be strictly liable for damage caused another by the vice or defect of the thing, his legal responsibility being based on the breach of his legal obligation to keep his thing in such condition that it does no damage to others."[37]

Though the record indicates the road was sloped up to the crossing, there is no evidence of any defect in the road. KCS's own representative said in his deposition that there was nothing wrong with the road, and that the slope was gradual. Though KCS asserts that the Landowners had a duty to warn of and protect against any unsafe defect in their road, KCS has not offered any

---

[35] 571 So. 2d 183, 184-86 (La. Ct. App. 1991).

[36] LA. CIV. CODE ANN. art. 2317.

[37] *Marshall v. Air Liquide-Big Three, Inc.*, 107 So. 3d 13, 39 (La. Ct. App. 2012) (alteration in original) (quoting *King v. Louviere*, 543 So. 2d 1327, 1328 (La. 1989)).

evidence to suggest the slope or condition of the road was problematic (i.e., that the Landowners breached their duty to maintain the road in reasonably safe condition), necessitating any such notification. No reasonable fact-finder could find the Landowners' duty to maintain their road in reasonably safe condition or to warn of any unsafe condition has any applicability to the accident in this case. Accordingly, we agree with the district court that this argument fails.

## C

To the extent that KCS argues that Landowners should have notified KCS of the operation of the machinery based on statutory obligation, these arguments are unpersuasive.[38] The statute requires an *operator* of heavy equipment to notify the railroad of an intended crossing; any duty under the statute would be thus owed by Precision.[39] Because, as discussed above, the Landowners are not liable for Precision's negligence, we agree with the district court's conclusion that the Landowners did not owe any statutory duty to KCS.

## VI

Based on a review of the record evidence, pleadings, briefing, arguments, and applicable law, we agree with the district court that KCS has failed to raise any genuine dispute of material fact as to either its theory of vicarious liability or independent negligence. Our determination of non-liability on these points renders the issues of causation and lost profits moot, and we decline to reach them here.

\* \* \*

For the foregoing reasons, we AFFIRM the district court's judgment.

---

[38] *See* LA. STAT. ANN. § 32:174.

[39] *Id.* This statute is part of the Louisiana Highway Regulatory Act, and arguably inapplicable to a private crossing. However, to the extent it is applicable, it places the duty to notify on the operator or driver, not on the landowner. *Id.*