# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #050

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **14th day of October, 2015**, are as follows:

**BY JOHNSON, C.J.**:

2015-C -0477       PATRICIA ANN THOMPSON v. WINN-DIXIE MONTGOMERY, INC., ET AL.
(Parish of Iberia)

For the above reasons, we reverse the judgment of the court of appeal as to apportionment of liability and reinstate the district court's judgment on the jury's allocation of fault. We likewise reverse the court of appeal's judgment assessing 100% of the costs to Winn-Dixie and reinstate the district court's order taxing Winn-Dixie and Ms. Thompson each with 50% of the costs. REVERSED AND RENDERED.

SUPREME COURT OF LOUISIANA

NO. 2015-C-0477

PATRICIA ANN THOMPSON

VERSUS

WINN-DIXIE MONTGOMERY, INC., ET AL.

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
THIRD CIRCUIT, PARISH OF IBERIA

**JOHNSON, Chief Justice**

Plaintiff, Patricia Ann Thompson, was injured when she slipped and fell in a puddle of water while shopping at a Winn-Dixie store. Plaintiff filed suit against Winn-Dixie, which in turn filed a third party demand against Southern Cleaning Services, Inc. ("SCSI") which was contracted to provide floor care and janitorial services to Winn-Dixie. SCSI filed a third party claim against its subcontractor for those services, KAP Cleaning Services, Inc. ("KAP"). Following a jury trial, the jury returned a verdict in favor of Ms. Thompson, finding KAP 70% at fault and Winn-Dixie 30% at fault. On appeal, the court amended the district court's judgment holding that Winn-Dixie was statutorily 100% at fault. We granted Winn-Dixie's writ application to determine the correctness of the court of appeal's ruling.

FACTS AND PROCEDURAL HISTORY

On July 21, 2008, at approximately 10:00 p.m., Patricia Thompson was shopping at the Winn-Dixie store in New Iberia, Louisiana, with her 8 year-old son. Ms. Thompson was pushing a shopping cart and stopped at one of the meat cases to take an item. After she placed the item in her cart, she proceeded to step forward and slipped on a puddle of water in front of the case. After speaking with the store manager, Michael Kimble, about the incident, Ms. Thompson completed her purchase

1

and filled out an incident form. The "Customer Accident Investigation Form," completed by Mr. Kimble, provides the following description of the accident:

> The Floor Cleaning crew picked up the rug in front of the meat case and it was wet under it. Pat was walking down the meat case and slipped in the wet spot where the rug was rolled up. She said she just had back surgery. She said that her legs was hurting. She finished her shopping.

Floor care janitorial services at the store were provided for pursuant to a contract between Winn-Dixie and SCSI. SCSI, in turn, sub-contracted the work to a cleaning service owned by Mildred Caldwell, d/b/a KAP Cleaning Service. KAP's employee, Veronica Hausner, was assigned to work at the New Iberia Winn-Dixie store.

Winn-Dixie routinely placed rubber-backed floor mats in front of the meat cases to catch any drippings when loading or unloading items. However, it is undisputed there was no floor mat placed down in front of the meat case at the time of Ms. Thompson's fall. Instead, the mat had been rolled up and pushed underneath the front of the meat case by Ms. Hausner. As part of KAP's routine duties, floor mats were cleaned and rolled up to prepare for the mopping process. According to the collective testimony, the size of the water puddle was approximately 4' x 2-3' and would have been covered by the floor mat, had it not been rolled up.

KAP personally trained its employees, and KAP safety procedures dictated that if an employee found a spill or other condition on the premises that could be considered hazardous, the employee was required to remain in the area of the hazard until it was cleared. KAP employees were also trained regarding putting out "wet floor" markers. Ms. Hausner was not in the area of the water puddle at the time Ms. Thompson fell, nor were "wet floor" signs placed out in the area.

Mr. Kimble testified he did not see any spills that night in front of the meat cases which would have warranted a clean-up or directive to the cleaning service. The meat department of the store closed at 8:00 p.m. and was not staffed by Winn-Dixie

employees at the time of the accident. Mr. Kimble also conceded he did not routinely walk the aisles of the store every thirty minutes, as required by Winn-Dixie's policies.

Evidence was presented at trial regarding the source of the water on the floor. The evidence indicates the water likely "leaked" from the meat case, but the parties disputed whether Winn-Dixie had actual or constructive notice of the water. Ms. Thompson presented evidence demonstrating a history of lingering "leak" problems with the cases, including a May 28, 2008, service ticket stating the frozen food and meat cases "are all leaking water," with no record of a repair to that particular meat case prior to her accident. Winn-Dixie asserted there was no evidence of a "leak" problem with that particular meat case. Additionally, Winn-Dixie presented testimony from its refrigeration maintenance technician, Raymond Daigle. Mr. Daigle explained that although all meat cases were reported to be "leaking," the meat cases do not "leak" because these units do not circulate water. However, he testified that condensation would develop on the cases and accumulate on the floor around them depending on temperature and humidity levels in the store. He further testified he was in the store on the day of Ms. Thompson's accident to fix a temperature problem in the seafood cases, located in the same vicinity as the meat cases. He also checked Freon levels in all refrigeration units requiring him to walk around most of the store. Mr. Daigle did not observe any problem with a leaking case in the meat department that day, nor was any leak reported to him.

Prior to trial, Ms. Thompson settled with SCSI and KAP. However, because Winn-Dixie pled the affirmative defense of third-party fault, the fault of KAP remained an issue for trial. The jury returned a verdict in favor of Ms. Thompson, finding KAP 70% at fault, Winn-Dixie 30% at fault, Ms. Thompson 0% at fault, and awarding Ms. Thompson damages. The district court denied both parties' Motions for Judgment Notwithstanding the Verdict and entered judgment on the jury verdict.

Both parties appealed.[1] The court of appeal amended the judgment of the district court, casting Winn-Dixie with 100% liability and increasing the amount of damages awarded to Ms. Thompson. *Thompson v. Winn-Dixie Montgomery, Inc.*, 13-1063 (La. App. 3 Cir. 12/10/14), 158 So. 3d 41. In so doing, the court of appeal found the jury erred as a matter of law in concluding that Winn-Dixie was only 30% at fault:

> We find the law statutorily imposes liability on Winn-Dixie, "the merchant," in a slip-and-fall accident that occurred on its premises. The law does not make any provision allowing Winn-Dixie to delegate its statutorily imposed duties by contracting with third-parties. Were this not so, every grocery store in the state could seek to avoid their statutory duties to shoppers to provide a safe place to shop by contractually assigning its responsibilities to third-party contractors such as the small, financially impecunious sub-contractor, KAP, in this case. Winn-Dixie is statutorily liable to Plaintiff for one-hundred percent of the damages occasioned by its negligence when, as here, its breach of duty caused Plaintiff injury. Thus, we find the jury erred as a matter of law in concluding that Winn-Dixie is only thirty percent at fault for this accident.

*Thompson*, 158 So. 3d at 45.

The court additionally found Winn-Dixie was not shielded from its statutory liability to Ms. Thompson because Winn-Dixie "clearly maintained the right to control and supervise the work of the KAP employee." The court explained that while a principal is generally not liable for the acts of its independent contractor, an exception to that rule applies when the principle reserves the right to supervise or control the work of the independent contractor or gives express or implied authorization to an unsafe practice. In finding this exception applicable to Winn-Dixie, the court stated:

> Here, Winn-Dixie reserved the right to supervise and control the work of the independent contractor [SCSI] and it, in turn, made this

---

[1] Subsequent to filing its Motion for Suspensive Appeal, Winn-Dixie's appeal was dismissed for abandonment under the provisions of La.Code Civ.P. art. 2126. The judgment dismissing Winn-Dixie's suspensive appeal reserved Winn-Dixie's right to "seek modification, revision, or reversal of the final judgment by answer to the Plaintiff's appeal." Winn-Dixie timely filed an answer to Plaintiff's appeal.

4

requirement part of its contract with KAP. The "Agreement for Floor Care Janitorial Services" provided that Winn-Dixie reserved the right to determine the color and type of uniform the cleaning personnel were required to wear when working in its stores; the right to set the schedules for all employees of the contractor [SCSI] or sub-contractor, KAP, working in its stores; the right to change the days/hours of cleaning services; the right to conduct un-announced inspections...of any contracted cleaning agents, assistants, employees, laborers, or subcontractors and his or her property. This includes, but is not limited to personal property, lunch pails, knapsacks, outerwear, boxes, brief cases, pails, scrubbers, etc. These inspections will be un-announced and may be conducted by [Winn-Dixie's] loss prevention, security or Store Location personnel.

The court also pointed to a document entitled "Specific Janitorial Services," attached to the Agreement, setting forth each and every item of work to be performed, along with the frequency of each detailed item of work to be performed. *Id*. at 45-46.

Finally, the court of appeal found the evidence in the record supported a finding that Ms. Thompson's injuries resulted from Winn-Dixie's failure to provide a safe place to shop:

Winn-Dixie's manager on duty on the evening of Plaintiff's fall confirmed there was a wet area on the floor at the time that Plaintiff fell. He further confirmed that the mats placed on the floor to avoid a customer slipping on water leaking from the display cases were smaller in size than the area of water on the floor where Plaintiff fell. This is not consistent with Winn-Dixie's own safety-mat program designed for the safety of patrons shopping in its stores. Documents entered into evidence show Winn-Dixie knew its display cases were leaking months before this incident and that its attempts to rectify the problem were not working. Despite these facts, Winn-Dixie failed to offer evidence to show that the independent cleaning contractor, working under its supervision and control, was informed of the leaking problem. Additionally, the record shows Winn-Dixie's procedures for maintaining this area were not followed on the evening Plaintiff slipped and fell, and Winn-Dixie's manager on duty that evening did not perform the required policy of walking the store every thirty minutes to guard against such hazards. This was especially important given Winn-Dixie's knowledge of the persistent problem with water leakage on the floor in front of its display cases. Plaintiff met her burden to prove that Winn-Dixie failed to meet its statutory duty to her to provide a safe place to shop. Plaintiff proved the elements necessary to recover damages from Winn-Dixie. No evidence forms any basis to assign any negligence to Plaintiff.

*Id*. at 47.

5

Winn-Dixie filed a writ application in this court, asserting the court of appeal erred in casting it with 100% fault and in increasing Ms. Thompson's damages award. We granted Winn-Dixie's writ application in part, solely to review the issue of apportionment of liability.[2]

## DISCUSSION

The relevant duty and burden of proof in a negligence case against a merchant is set forth in La. R.S. 9:2800.6:

A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.

B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:

(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.

(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.

(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

C. Definitions:

(1) "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.

---

[2] *Thompson v. Winn-Dixie*, 15-477 (La. 6/5/15), — So. 3d —. Because we granted the writ application in part, the court of appeal's ruling on damages is final and not affected by our decision.

(2) "Merchant" means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business. For purposes of this Section, a merchant includes an innkeeper with respect to those areas or aspects of the premises which are similar to those of a merchant, including but not limited to shops, restaurants, and lobby areas of or within the hotel, motel, or inn.

D. Nothing herein shall affect any liability which a merchant may have under Civil Code Arts. 660, 667, 669, 2317, 2322, or 2695.

Thus, generally, Winn-Dixie owed a duty to Ms. Thompson to exercise reasonable care to keep its floors in a reasonably safe condition and to keep the store free of hazardous conditions. To prove her fall was caused by Winn-Dixie's breach of this duty, Ms. Thompson had the burden to prove the water on the floor presented an unreasonable risk of harm, that Winn-Dixie either created or had actual or constructive notice of the water, and that Winn-Dixie failed to exercise reasonable care.

Winn-Dixie argues the court of appeal legally erred in failing to apply comparative fault and interpreting La. R.S. 9:2800.6 to require imposition of solidary liability on Winn-Dixie for the fault of a joint tortfeasor, KAP. By contrast, Ms. Thompson argues the court of appeal did consider comparative fault to find the jury was manifestly erroneous in apportioning fault to KAP. We find Ms. Thompson's argument to be without merit. Our reading of the court of appeal's opinion reveals nothing to support a conclusion that the court reviewed the record for manifest error and made a specific finding that KAP should be cast with 0% fault. Rather, based on Winn-Dixie's statutory duties under La. R.S. 9:2800.6, the court of appeal specifically held the jury *legally erred* in concluding that Winn-Dixie was only 30% at fault. The court did not conduct an analysis of comparative fault between Winn-Dixie and KAP, nor did the court discuss KAP's negligence, or lack thereof. The only reference to comparative fault is a single sentence wherein the court of appeal stated "no evidence forms any basis to assign any negligence to Plaintiff." Thus, while it

7

could be argued the court of appeal reviewed the record for manifest error regarding Ms. Thompson's comparative fault, the same argument cannot be made relative to comparative fault on the part of KAP. Therefore, because our resolution of this particular issue involves the correct interpretation of a statute, it is a question of law, and reviewed by this court under a de novo standard of review. *Red Stick Studio Dev., L.L.C. v. State ex rel. Dep't of Econ. Dev.*, 10-0193 (La. 1/19/11), 56 So. 3d 181, 187.

The court of appeal suggests that because Winn-Dixie owed a statutory duty to Ms. Thompson under La. R.S. 9:2800.6, it was impossible for a third-party such as KAP to be found even partly at fault. The opinion, in effect, creates a strict liability situation wherein merchants are 100% responsible for slip and fall accidents on their premises despite the fault of a third party. Although La. R.S. 9:2800.6 does place a duty on a merchant to "to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition," nothing in the statute precludes application of comparative fault laws to third parties who may have contributed to a plaintiff's injuries. The court of appeal essentially imposed solidary liability on Winn-Dixie without making any finding regarding KAP's liability, thereby rejecting the mandates of Code of Civil Procedure Articles 2323 and 2324.

La. C.C. art. 2323 provides, in pertinent part:

A. In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute, … or that the other person's identity is not known or reasonably ascertainable….

B. The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability.

Further, La. C.C. art. 2324 provides, in pertinent part:

A. He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage

caused by such act.

B. If liability is not solidary pursuant to Paragraph A, then liability for damages caused by two or more persons shall be a joint and divisible obligation. A joint tortfeasor shall not be liable for more than his degree of fault and shall not be solidarily liable with any other person for damages attributable to the fault of such other person, including the person suffering injury, death, or loss, regardless of such other person's insolvency, ability to pay, degree of fault, immunity by statute or otherwise, including but not limited to immunity as provided in R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable.

When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. C.C. art. 9. Accordingly, the starting point for the interpretation of any statute is the language of the statute itself. *Dumas v. State ex rel. Dept. of Culture, Recreation & Tourism*, 02-0563 (La. 10/15/02), 828 So. 2d 530, 536. These Civil Code articles do not eliminate or make an exception for liability based on merchant fault under La. R.S. 9:2800.6. On the contrary, the language of Articles 2323 and 2324 clearly and unambiguously provides that comparative fault principles apply in "any action for damages" and apply to "any claim" asserted under "any law or legal doctrine or theory of liability." It is indisputable that under the express provisions of La. C.C. art. 2323, 100% of the causative fault for a harm must be allocated in actions for an injury under any theory of liability. *See* H. Alston Johnson, 12 La. Civ. L. Treatise, *Tort Law* §§ 8.5 & 16.29 (2d ed.). As this court squarely held in *Dumas*, 828 So. 2d at 537-39, Articles 2323 and 2324 require that each actor be assigned an appropriate percentage of fault regardless of the legal theory of liability asserted against each person, and that each joint tortfeasor is only liable for his degree of fault. Further, there is no conflict between either Articles 2323 or 2324 and La. R.S. 9:2800.6 that could be classified as "absurd." "The fundamental purpose of Louisiana's comparative fault scheme is to ensure that each tortfeasor is responsible only for the portion of the damage he has

caused." *Miller v. LAMMICO*, 07-1352 (La. 1/16/08), 973 So. 2d 693, 706. Statutory duties imposed on one tortfeasor do not excuse joint tortfeasors from the consequences of their own negligent acts.

Further, contrary to the court of appeal's finding, a merchant such as Winn-Dixie does not "escape its statutorily imposed duty to its patrons" by contracting with a third party for floor cleaning services. The contract does not eliminate Winn-Dixie's statutory duties owed to its patrons under La. R.S. 9:2800.6. But the existence of these statutory duties does not abrogate the duty of care owed by KAP pursuant to La. C.C. art. 2315[3] in performing the floor cleaning work. *See, e.g., Boudreaux v. Farmer*, 604 So. 2d 641, 650-52 (La. App. 1st Cir. 1992), *writ denied*, 605 So. 2d 1373 (1992). Moreover, existence of these statutory duties does not mandate a finding of fault on the part of the merchant. Apportionment of liability to the merchant still requires a plaintiff to prove a breach of the duties set forth in La. R.S. 9: 2800.6. *See*, *e.g.*, *Thomas v. Albertsons, Inc.*, 28,950 (La. App. 2 Cir. 12/11/96), 685 So. 2d 1134 (wherein a third party floor cleaning contractor was found 100% liable for plaintiff's slip and fall because the plaintiff failed to prove the merchant had notice of the wet floor caused by the contractor's mopping).

We must also reject the court of appeal's suggestion that Winn-Dixie is 100% statutorily liable because Winn-Dixie should not be allowed to contractually assign its responsibilities to a small, "financially impecunious sub-contractor." To the extent the court of appeal finds Winn-Dixie is responsible for KAP's fault because of the disparity in their sizes and wealth, we note such a consideration is prohibited by La. C.C. art. 2324(B), which mandates that a tortfeasor shall not be solidarily liable for the negligence of a joint tortfeasor, regardless of that person's insolvency or ability

---

[3] La. C.C. art. 2315 (A) states: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

10

to pay.

For the above reasons we find the court of appeal legally erred in its interpretation of La. R.S. 9:2800.6. Civil Code articles 2323 and 2324 are applicable to claims falling under La. R.S. 9:2800.6. Thus, Winn-Dixie cannot be held statutorily liable for KAP's fault.

Even after finding Winn-Dixie to be 100% statutorily liable, the court of appeal alternatively justified its holding by finding Winn-Dixie was not shielded from its statutory liability to Ms. Thompson because it exercised control over KAP's work. We disagree. Although the issue of "operational control" was not pled, briefed or argued by any party, it was raised *sua sponte* by the court of appeal in its opinion. La. C.C.P. art. 2124 gives an appellate court authority to "render any judgment which is just, legal, and proper upon the record on appeal." Further, Rule 1.3 of the Uniform Rules of the Courts of Appeal provides the court of appeal "will review only those issues which were submitted to the trial court and which are contained in specification or assignments of error, *unless the interest of justice clearly requires otherwise.*" (Emphasis added). However, once a court of appeal decides to review an issue, the better practice is to invite additional briefing from the parties prior to rendering judgment. The court of appeal's failure to give the parties notice of its *sua sponte* determination or to provide them with an opportunity to be heard on the issue of operational control was legal error. *Merrill v. Greyhound Lines, Inc.* 10-2827 (La. 4/29/11), 60 So. 3d 600, 602; *Wooley v. Lucksinger*, 09-0571 (La. 4/1/11), 61 So. 3d 507, 564.

Yet, even without the benefit of opposing argument or evidence from Winn-Dixie, we find the evidence in the record insufficient to establish that Winn-Dixie exercised operational control over KAP. The court of appeal correctly noted that, generally, a principal is not liable for the offenses committed by an independent

11

contractor while performing its contractual duties. *Ellerbe v. Albertsons, Inc.*, 43,452 (La. App. 2 Cir. 8/13/08), 989 So. 2d 303, 305; *Sys. Contractors Corp. v. Williams & Associates Architects*, 99-1221 (La. App. 5 Cir. 9/26/00), 769 So. 2d 777, 781; *Thomas v. Albertsons, Inc.*, 28,950 (La. App. 2 Cir. 12/11/96), 685 So. 2d 1134, *writ denied*, 97-0391 (La. 3/27/97), 692 So. 2d 395; *Morales v. Davis Brothers Construction Company, Inc.*, 94-0902 (La. App. 4 Cir. 12/15/94), 647 So. 2d 1302, *writ denied*, 95-0139 (La. 3/17/95), 651 So. 2d 271. Two exceptions to this general rule exist: where the work is ultra-hazardous; or if the principal reserves the right to supervise or control the work of the independent contractor. *Sys. Contractors Corp.*, 769 So. 2d at 781; *Ledent v. Guar. Nat. Ins. Co.*, 31,346 (La. App. 2 Cir. 12/28/98), 723 So. 2d 531, 537. The court of appeal relied on the "Agreement for Floor Care Janitorial Services" between Winn-Dixie and SCSI (made part of the contract between SCSI and KAP) to find Winn-Dixie maintained the right to control and supervise the work of KAP's employee. Contrary to the court of appeal's findings, our review of the contracts, in conjunction with the testimony presented at trial, establishes that KAP was an independent contractor and Winn-Dixie did not exercise operational control over KAP's employees. The court of appeal placed undue emphasis on the fact that Winn-Dixie contractually dictated the hours for cleaning, the staff's attire, the equipment used, terms of inspections, and detailed descriptions of the work to be performed. These factors are indicative of supervisory control a merchant is permitted over a cleaning service that enters a commercial operation during business hours where patrons are present. Here, the employee was hired, trained and supervised by KAP, and was permitted to move about the store freely to complete her tasks without any supervision or accompaniment by Winn-Dixie. The employee was assigned to the store by KAP, not chosen by Winn-Dixie. In the event the KAP employee did not show up or there was a problem with work performance,

12

the Winn-Dixie store manager contacted KAP's local manager, not the employee directly. Winn-Dixie did not directly pay the employee or provide any benefits. The employee's time sheet information was provided by Winn-Dixie to SCSI. In turn, SCSI payed KAP, which subsequently issued a paycheck to its employee. KAP was required to provide all necessary equipment and materials. And, KAP was required to maintain a regular, systematic inspection of the Winn-Dixie premises by a manager or supervisor to ensure the work was performed in a good and workmanlike manner.

Notably, while relying on the contracts to find operational control, the court of appeal ignored contractual language which directly contravenes that finding. The "Agreement for Floor Care Janitorial Services" executed between Winn-Dixie and SCSI specifically provided that "[SCSI] is responsible for the direct control and supervision of contractors, agents, assistants, employees, laborers, subcontractors and supplies in the performance of the services." Moreover, the contract with KAP designated KAP as an independent contractor and provided KAP with sole authority to direct and control its personnel: "[KAP] shall employ and direct such personnel, as it requires performing the services herein contemplated, and shall exercise full and complete authority over its personnel."

Because we find no legal basis to impose 100% liability on Winn-Dixie, we proceed to review the record for manifest error on the jury's allocation of fault. The allocation of fault is a factual determination which is reviewed under the clearly wrong standard. *Clement v. Frey*, 95-1119 (La. 1/16/96), 666 So. 2d 607, 611. The standard of review we must apply to a trial court's or a jury's findings of fact is well settled. A reviewing court may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." This court has stated a two-part test for the reversal of a factfinder's determinations: 1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding

of the trial court, and 2) the appellate court must further determine that the record establishes that the finding is clearly wrong or manifestly erroneous. We are cognizant of the fact that we must do more than merely review the record for some evidence that supports the lower court's finding. Rather, the reviewing court must review the entire record before it and determine whether the jury's finding was clearly wrong or manifestly erroneous. *Read v. Willwoods Cmty.*, 14-1475 (La. 3/17/15), 165 So. 3d 883, 888.

Fault is evaluated under factors enumerated by this court in *Watson v. State Farm Fire and Casualty Insurance Co.*, 469 So. 2d 967 (La. 1985): (1) whether the conduct resulted from inadvertence or involved an awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of the actor, whether superior or inferior, and, (5) any extenuating circumstances which might require the actor to proceed in haste without proper thought.

With the foregoing legal standards in mind, we have reviewed the entire record and find it contains sufficient evidence from which a rational trier of fact could find KAP 70% at fault and Winn-Dixie 30% at fault. The record evidence demonstrates that Ms. Hausner, as part of her regular cleaning duties for KAP, rolled up the mat in front of the meat case and placed it under the case to prepare to mop the floor. Once the mat was rolled up, the puddle of water was exposed. There is no evidence that Winn-Dixie was aware of the water puddle prior to Ms. Thompson's fall. After the mat was rolled up exposing the water, Ms. Hausner left the area unprotected and failed to place "wet floor" signs in the area, contrary to KAP's safety policies. Moreover, based on the size of the water puddle, it would have been completely covered by the mat had it not been rolled up. Although Ms. Thompson presented evidence that the mats used were smaller than those required by Winn-Dixie's safety

14

mat policies (3 ft. x 10 ft.), Mr. Kimble clarified that the mats were the same width but approximately half the length of the size stated in the safety mat policy. Thus, the shorter mat was still sufficient in size to cover the water puddle. Further, Winn-Dixie's "Safety Mat Program" does not mandate the 3 ft. x. 10 ft. size in the "Market" area of the store, which encompasses the meat department.

The jury also heard disputed evidence regarding the source of the water. The evidence indicated the water came from the meat case, but the jury was presented with disputed evidence regarding whether the cases actually "leaked," the frequency of such leaks, and whether Winn-Dixie was aware of a problem with that particular meat case. The jury's allocation of fault is consistent with evidence in the record. It is reasonable that the jury attributed some fault to Winn-Dixie as being responsible for keeping its floors clear and free of any hazardous conditions given the possibility of condensation developing on the meat cases and causing wet spots on the floor . It is also reasonable to assume the jury placed a greater percentage of fault on KAP because its employee was the only person with first hand knowledge of the water and was in the best position to prevent the accident had she not violated KAP's safety policies. Further, although the jury heard evidence related to Winn Dixie's failure to conduct inspections every thirty minutes as required by its safety policies, we can reasonably assume the jury found this insignificant because the hazard (water puddle) would have been fully concealed by the floor mat even if Winn-Dixie had conducted such inspections.

Applying the *Watson* factors to these facts, we find KAP was in a superior position to Winn-Dixie to be aware of and warn Ms. Thompson of the hazard. Further, the conduct of KAP's employee in rolling up the mat, exposing the hazard and abandoning the scene, created a greater risk to Ms. Thompson than any conduct attributed to Winn-Dixie. And although KAP was directly responsible for Ms.

15

Thompson's slip and fall, Winn-Dixie remained ultimately responsible for maintaining its floors in a safe condition. The jury properly applied the provisions of La. R.S. 9:2800.6, along with Articles 2323 and 2324, to allocate fault. A reasonable interpretation of the facts supports a finding that KAP bore the majority of fault both as to the nature of the conduct as well as the relationship to the damage. For the above reasons, we find no manifest error in the jury's allocation of 70% fault to KAP and 30% fault to Winn-Dixie.

Winn-Dixie also seeks an equitable apportionment of costs pursuant to La. C.C.P. art. 2164.[4] Following a rule to show cause on cross-motions to tax costs, the district court entered judgment granting all costs requested, but ordering the parties to share equally in the payment. The court found 50/50 division of costs equitable because KAP was found 70% at fault and plaintiff received a pre-trial settlement from KAP. On appeal, the court ordered all costs assessed against Winn-Dixie after finding it 100% liable. Because we are reinstating the district court's judgment on allocation of fault and liability, we also reinstate the district court's taxing of costs, finding no abuse of discretion.

**CONCLUSION**

After a review of the law and record, we find the court of appeal committed legal error in amending the trial court's judgment to assign 100% fault to Winn-Dixie. We find the jury's allocation of 30% fault to Winn-Dixie and 70% fault to KAP is supported by the record. For the above reasons, we reverse the judgment of the court of appeal as to apportionment of liability and reinstate the district court's judgment on the jury's allocation of fault. We likewise reverse the court of appeal's judgment assessing 100% of the costs to Winn-Dixie and reinstate the district court's

---

[4] La. C.C.P. art. 2164 provides: "The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages, including attorney fees, for frivolous appeal or application for writs, and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable."

order taxing Winn-Dixie and Ms. Thompson each with 50% of the costs.

## DECREE

**Reversed and rendered.**