Judge Dale N. Atkins
In this slip and fall case, plaintiff/appellant, Venetia James ("James") appeals the district court's November 28, 2017, judgment granting a Motion for Summary Judgment in favor of Ernest N. Morial New Orleans Exhibition Hall Authority (aka) The New Orleans Morial Convention Center ("Convention Center"), and the Insurance Company of The State of Pennsylvania ("ICSOP") (collectively "Defendants"). For the reasons set forth below, we affirm.
*961 On April 17, 2014, James filed suit against the Convention Center and AIG Insurance Company, alleging that she sustained injuries as a result of having a rug pulled out from under her feet when she was working near a display booth operated by Belenco Quartz Surfaces ("Belenco"). Belenco was an exhibitor at the Kitchen and Bath Industry Show being held at the Convention Center. At the time, James was working under contract with Century Security. She was assigned to a security detail for Neilsen Expositions, who in turn was renting space from the Convention Center for the Kitchen and Bath Industry Show. The Convention Center answered the lawsuit on June 4, 2014. ICSOP improperly named as AIG Insurance Company, answered on July 11, 2014.
Defendants filed a Motion for Summary Judgment on February 14, 2017, asserting that the Convention Center had no duty to protect James from injury nor did the Convention Center play any part in her alleged injuries. In support of the Defendants' Motion for Summary Judgment, Defendants attached the Affidavit of Robert Johnson ("Johnson"), the President and General Manager of the New Orleans Ernest N. Morial Convention Center. In his affidavit, Johnson stated that the Kitchen and Bath Industry Show was held at the Convention Center pursuant to a contract with Nielsen Expositions to rent space for the show. Individual contractors, including Belenco, at whose booth the alleged accident occurred, contracted for their space through Nielsen Expositions. Johnson reported that no Convention Center employees were involved in either erecting or dismantling the Belenco booth at the show. Also, he reported that individual exhibitors or their hired contractors were responsible for dismantling the booths; the Convention Center did not employ or supervise employees of the exhibitors, or exhibitor-appointed contractors, or any other entity involved in dismantling the booths. Johnson stated that an incident report regarding James' injury was prepared. A copy of the contract between Nielsen Expositions and the Convention Center and of the incident report was attached to Johnson's affidavit.
The contract contained an indemnity provision, wherein Nielsen Expositions agreed to indemnify and hold harmless the Convention Center and its officers, assigns, agents, employees, and contractors, in the event of injury or damage to any persons or property arising out of the Kitchen and Bath Industry Show.
The incident report noted that, on April 21, 2013 at approximately 3:15 p.m., a medical report was taken of Venita James, an employee for Century Security. According to the report, James had dislocated her right shoulder, was in need of further medical treatment, and was transported by emergency medical services to Touro Hospital. At the time the report was taken, James stated that, while walking inside the Kitchen and Bath Convention, she tripped at the Belenco Quartz Surfaces' booth # 1535.
A portion of James' deposition, taken January 15, 2015, was also attached in support of the Motion for Summary Judgment. Therein, James reported that, on the date in question, she saw exhibitors and contractors all tearing down booths "at the same time." As James was walking up to a booth, where she had to "squeeze through" the aisles, a person working on the booth pulled on the carpet where she was walking, causing her to lose her balance. James reported that sometimes the exhibitors will tear down their own booths and sometimes their hired contractors will dismantle them. She did not know the identity of the particular contractor who pulled on the rug but believed he was *962 either with "Freeman Contractors" or "another contractor, I believe." She did not know who had hired the contractor. Although James stated, "We had people from the convention center working in there also," she did not identify anyone from the Convention Center and did not report that any Convention Center employee was tearing down booths or had been involved in tearing down the booth where the accident occurred in her deposition. James conceded that what caused her to fall was the pulling on the rug by the unknown contractor, whose actions caused her to lose her balance and fall down; she did not trip over anything.
James' Affidavit, executed on May 8, 2017, was submitted in response to the Motion for Summary Judgment. Therein, she stated that there were no warning signs or personnel reporting that demolition work was being conducted on the date of her injury. She also claimed that Convention Center Personnel were "working in and around the booth along with contract personnel," and therefore they [Convention Center personnel] "had to know what took place regarding demolition and construction" of the exhibition.
The Motion for Summary Judgment came for hearing on October 20, 2017. Defendants argued that the Convention Center did not have a legal duty to protect James from the incident as Convention Center employees played no part in the erection or dismantling of the Belenco booth; did not have any prior knowledge of the action alleged to have caused the injury; and were not responsible for the contractor who pulled the rug out from under James. Defendants further asserted that the accident happened in an instant, was not based on a defect in the premises, or on a condition that had existed for any length of time, that would require notice or warning. The district court granted summary judgment in favor of Defendants on October 20, 2017, issuing a written judgment on November 28, 2017.
James raises eight assignments of error on appeal,[1] none of which are briefed or supported by citation to the record. As such, the issues are deemed abandoned. See Uniform Rules-Courts of Appeal, Rule 2-12.4 (B)(3) and (4). The Court addresses, however, the two related and ultimately dispositive issues raised by James, as follows: 1) whether a genuine *963 issue of material fact existed to create a legal duty on behalf of the Convention Center to protect James from harm; and, 2) whether the trial court applied the correct standard for granting a motion for summary judgment.
Applicable Law/Standard of Review:
After an opportunity for adequate discovery,[2] a motion for summary judgment is properly granted if the motion, memorandum, and supporting documents (pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions) show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 (A)(3) and (4). "The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." La. C.C.P. art. 966 (D)(1). "The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." Id. When a motion for summary judgment is made and supported, an adverse party may not rest on the mere allegations or denials of her pleading, but her response, by affidavits or as otherwise provided, must set forth specific facts showing that there is a genuine issue for trial. If she does not so respond, summary judgment, if appropriate, shall be rendered against her. La. C.C.P. art. 967 (B).
An appellate court's review of a summary judgment is de novo based on the evidence presented to the district court, using the same criteria used by the court in deciding whether summary judgment should be granted. Lewis v. Jazz Casino Co. , L.L.C. , 2017-0935, p. 5 (La. App. 4 Cir. 4/26/18), 245 So.3d 68, 72. "Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in the light of the substantive law applicable to" the case sub judice. Christakis v. Clipper Const., L.L.C. , 2012-1638, pp. 3-4 (La. App. 1 Cir. 4/26/13), 117 So.3d 168, 170 (citation omitted). The applicable substantive law in this case is set forth in La. C.C. art. 2315 (general negligence).
"The duty-risk analysis is the standard negligence analysis employed in determining whether to impose liability under La. C.C. art. 2315." Lemann v. Essen Lane Daiquiris, Inc. , 2005-1095, p. 7 (La. 3/10/06), 923 So.2d 627, 632-33. To succeed on her negligence claim, James must prove five elements: (1) defendant's duty of care to her; (2) the defendant's breach of duty; (3) defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) legal causation (scope of duty); and (5) damages caused by the breach of duty. Id. at p. 7, 923 So.2d at 633 ; Davis v. Witt , 2002-3102, 2002-3110, pp. 10-11 (La. 7/2/03), 851 So.2d 1119, 1127. If a plaintiff fails to prove any one of the five elements, a defendant cannot be held liable. Lemann, 2005-1095, at p. 8, 923 So.2d at 633 (citations omitted). See also *964 Jones v. Stewart , 2016-0329, p. 9 (La. App. 4 Cir. 10/5/16), 203 So.3d 384, 390.
"A threshold issue in any negligence action is whether the defendant owed the plaintiff a duty." Ponceti v. First Lake Properties, Inc. , 2011-2711, p. 2 (La. 7/2/12), 93 So.3d 1251, 1252 (citing Meany v. Meany , 1994-0251, p. 6 (La. 7/5/94), 639 So.2d 229, 233 ). "Whether a duty is owed is a question of law." Lemann , 2005-1095, at p. 8 (La. 3/10/06), 923 So.2d at 636.
Under Louisiana law, a landowner is not responsible for the negligence of contractors unless the work is inherently dangerous or the owner exercises control over the contractor's method of operation giving express or implied authorization to an unsafe practice. "Liability for the negligent and tortious acts of another does not flow simply because of a principal-agent or principal-mandatary relationship." Rowell v. Carter Mobile Homes, Inc. , 500 So.2d 748, 751 (La. 1987) (citation omitted). "Only when the relationship of the parties includes the principal's right to control physical details of the actor as to the manner of his performance, which is characteristic of the relation of master and servant, does the person in whose service the act is done become subject to liability for the physical tortious conduct of the actor." Id. ; Daniels v. Dauphine , 557 So.2d 1062, 1065 (La. App. 2 Cir. 1990).
"The same basic rule applies to independent contractors generally." Daniels , 557 So.2d at 1065. "[G]enerally, a principal is not liable for the offenses committed by an independent contractor while performing its contractual duties." Thompson v. Winn-Dixie Montgomery, Inc., 2015-0477, p. 12 (La. 10/14/15), 181 So.3d 656, 665. However, there are two exceptions to the general rule of non-liability: where the work performed by the contractor is ultra-hazardous; or if the principal reserves the right to supervise or control the work of the independent contractor. Id. "[T]he critical inquiry in determining whether an activity is ultra-hazardous or inherently dangerous is whether it can be made safe when it is performed in a proper and workmanlike manner. Buras v. Lirette , 1997-1255 (La. App. 4 Cir. 12/23/97), 704 So.2d 980, 983-84 (citation omitted).
Additionally, the owner or occupant of the property cannot permit a hazardous condition to exist on his property without giving adequate warning to those legally on the premises. McCauley v. Nicholas , 297 So.2d 914, 916 (La. App. 1 Cir. 1974). However, only conditions which would reasonably be expected to cause injury to one using ordinary care can be classified as hazardous or dangerous and give rise to the duty to warn. Id. In a case of this nature, James "must show the existence of a hazardous condition of which the owner had actual or constructive notice, and which caused the injury complained of." Miller v. Broadmoor Village, Inc. , 321 So.2d 925, 927 (La. App. 1 Cir. 1975).
James did not put forth any evidence to meet these requirements. First, James cannot identify the contractor, who the contractor was working for, or who hired the contract workers who were dismantling the Belenco booth where she sustained her injury. Although her affidavit differed slightly from her deposition testimony by indicating that "Convention Center personnel" were in the area during the dismantling of the booths, no evidence was presented that Convention Center employees or agents were involved in the dismantling of any of the exhibition booths, nor was there evidence that they specifically dismantled the Belenco booth. The mere presence in the area of Convention Center personnel is insufficient to place a legal duty on the Convention Center to protect *965 James from the hasty or impulsive actions of an independent contractor who was working at the Convention Center. Furthermore, the Affidavit of Johnson, submitted by Defendants, stated that no Convention Center employees were involved in either erecting or dismantling the Belenco booth at the Kitchen and Bath Industry Show. This evidence was not refuted by James.
Nor was evidence offered to establish that James' injuries were the result of ultra-hazardous work activity or the existence of an inherently dangerous condition in the property, of which the Convention Center should have had notice or given warning. The act of a hired contractor pulling on a rug is an instantaneous one, not a hazardous condition that existed on the premises for any period of time. Further, the dismantling of exhibition booths, when properly done, can be performed in a safe manner; the activity is not ultra-hazardous in nature.
Additionally, the evidence offered by James failed to show that the Convention Center exercised control over the contractor's method of operation or its employees. The affidavit of Johnson was not contradicted and he confirmed that the Convention Center did not employ or supervise employees of the exhibitors, or exhibitor-appointed contractors, or any other entity involved in dismantling the booths. Without evidence that the Convention Center exercised control over the actions of the independent contractor, we find no grounds that would allow this Court to impose liability upon the Convention Center.
Considering the law, evidence, affidavits and testimony presented in the case sub judice , we find that the trial court correctly applied the standard set forth in La. C.C.P. art. 966. James did not offer evidence to refute Defendants' contention that the Convention Center did not have a duty to protect her from the harm caused by an independent contractor. James failed to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C. P. art. 966 (D)(1). Accordingly, we conclude that summary judgment in favor of Defendants was properly granted.
For the above reasons, the November 28, 2017, judgment of the district court granting summary judgment in favor of Defendants is affirmed.
AFFIRMED
LOBRANO, J., CONCURS IN THE RESULT.

James raises the following assignments of error to support that a genuine issue of material fact exists: 1) the trial court erred in not finding that defendant was the owner/operator of the property where the plaintiff was injured and thus aware of and responsible for the property in question; 2) the trial court erred by not finding that the defendant did not have policies, procedures regarding the construction and or demolition of exhibition booths on its premises and if it did have policies, procedures and/or rules and regulations in place it failed to enforce them; 3) the trial court erred by not taking into consideration the fact that convention center personnel were at the booth in question and that they were regularly involved with contract personnel; 4) the trial court erred by failing to take into consideration that the defendant did not have nor did it require that warning signs be in place concerning the work being done in the exhibition booths; 5) the trial court erred when it failed to take into consideration that defendant had a duty to supervise and see that the booth was being taken down safely; 6) the trial court erred in failing to consider that defendant had no safety procedures whatsoever in place regarding the demolition of exhibit booths on it property; 7) the trial court erred in not considering whether the defendant negligently failed to see that the booth was being maintain in a safe condition, including keeping walkways, service ways, surfaces carpets, etc. clear, clean and in the proper working condition; and 8) the trial court erred by determining that the defendant was absolved from liability by contracting away its duty to keep and maintain the premises of the exhibit booth operator.

No claim is made that insufficient discovery was allowed prior to the Motion for Summary Judgment being filed.