# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 18-861


## WARREN DOUCET

## VERSUS

## SUPERIOR GAUGING SERVICES, INC., ET AL.


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 102743
HONORABLE JOHN D. TRAHAN, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## JONATHAN W. PERRY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Elizabeth A. Pickett, Phyllis M. Keaty, and Jonathan W. Perry, Judges.


**AFFIRMED.**

**Anthony C. Dupré**
**Dupré-Myers, L.L.C.**
**514 West Main Street**
**Post Office Drawer F**
**Ville Platte, Louisiana 70586**
**(337) 363-3804**
**Counsel for Plaintiff/Appellant:**
    Warren Doucet

**Kevin P. Merchant**
**Carolyn C. Cole**
**NEUNERPATE**
**One Petroleum Center**
**1001 W. Pinhook Road, Suite 200**
**Lafayette, Louisiana 70503**
**(337)-237-7000**
**Counsel for Defendant/Appellee:**
    Superior Gauging Services, Inc.

**Michael G. Lemoine**
**Jones Walker LLP**
**600 Jefferson St., Suite 1600**
**Lafayette, Louisiana 70501**
**(337)-593-7600**
**Counsel for Defendant/Appellee:**
    Shelf Energy, L.L.C.

**PERRY, Judge.**

In this personal injury lawsuit, Warren Doucet ("Plaintiff") appeals the trial court's grant of summary judgment in favor of the two defendants, Superior Gauging Services, Inc. ("Superior") and Shelf Energy, L.L.C. ("Shelf"), dismissing Plaintiff's claims against the two defendants with prejudice. We affirm.

## FACTS AND PROCEDURAL HISTORY

On December 22, 2015, Plaintiff was allegedly injured when a metal oil tank he was cutting up for scrap struck him. At the time of the accident, Plaintiff was on the property of Lotaire Duhon ("Duhon")[1] in Vermilion Parish, Louisiana. When the accident occurred, the Duhon property was subject to an oil and gas lease wherein Duhon granted certain mineral rights to Shelf. After the wells were no longer producing in paying quantities, Shelf plugged them and began to restore and clean the well site pursuant to the terms of its mineral lease contract with Duhon. In furtherance of its contractual obligations, Shelf contacted Rodney Quibodeaux ("Quibodeaux"), the co-owner of Superior, to perform the clean up operations.

One aspect of the clean-up involved the removal of four large storage tanks that had been used during production. Quibodeaux then contacted Earl Doucet ("Doucet") to look at the tanks and determine if he would be interested in removing them for scrap. Doucet, who was ill, brought Plaintiff, his cousin, to the job site; after examining the tanks, Plaintiff agreed to remove the tanks from service, put them on a trailer, haul them, and sell the metal for scrap. As Plaintiff was using a cutting torch to sever one of the storage tanks, the tank rolled over the chocks that had been placed to secure it and injured him.

---

[1] Although Plaintiff sued Lotaire Duhon, other information in the record implies that it was the heirs of Lotaire Duhon who executed the lease and may have inherited the property. For purposes of this opinion, we will simply refer to Duhon as the owner of the property.

Plaintiff filed a petition for damages against Superior and Shelf,[2] contending he suffered personal injury damages while he was performing storage tank demolition and scrap metal services on the Duhon property. After answers were filed to Plaintiff's petition and various depositions were taken, Superior and Shelf each filed motions for summary judgment, on April 5, 2018, and April 11, 2018, respectively, seeking dismissal of Plaintiff's claims; both motions were scheduled for hearing on May 29, 2018. Plaintiff filed his opposition to the motions for summary judgment on May 16, 2018, thirteen days before the hearing date. Superior and Shelf filed a joint motion to strike Plaintiff's opposition for failure to comply with the fifteen-day mandatory deadline provided in La.Code Civ.P. art. 966(B)(2) and La.Dist.Ct.R. 9.9 of the Uniform Rules of the District Court.

Initially, the trial court denied Superior's and Shelf's motion to strike. After hearing argument, the trial court granted Superior's and Shelf's motions for summary judgment and dismissed Plaintiff's claims against those defendants.[3]

Plaintiff filed this appeal, contending the trial court erred when it granted Superior's and Shelf's motions for summary judgment.[4]

---

[2] As noted above, Plaintiff also named Duhon as a defendant. The summary judgments granted in the present matter only involve Superior and Shelf. Neither Duhon nor the Duhon heirs are involved in this appeal.

[3] Although there were two motions for summary judgment, the trial court signed one judgment in which it granted both motions, dismissing Plaintiff's claims.

[4] "The Courts of Appeal will review only issues which were submitted to the trial court **and** which are contained in specifications or assignments of error, unless the interest of justice clearly requires otherwise." Uniform Rules—Courts of Appeal, Rule 1-3; (Emphasis added). Plaintiff has not designated assignments of error for us to consider. Rather, Plaintiff argues in brief that because of the language of the contract between Shelf and Duhon, he was a third-party beneficiary of that contract. With this as a legal basis, Plaintiff contends numerous genuine issues of material fact existed which would have made summary judgment improper. Although we could reach this argument in "the interest of justice," we find this argument is not properly before us for reasons more fully explained *infra*.

# ANALYSIS

Louisiana Code of Civil Procedure Articles 966 and 967 govern motions for summary judgment. The legislature has extensively amended these articles in 1996, when it first pronounced that summary judgment procedure is favored. *See* 1996 La. Acts 1st Ex.Sess. No. 9, § 1; *Hayes v. Autin*, 96-287 (La.App. 3 Cir. 12/26/96), 685 So.2d 691, *writ denied*, 97-281 (La. 3/14/97), 690 So.2d 91. The most recent amendment to Article 966(B) altered the deadlines for filing motions for summary judgment and oppositions thereto. 2015 La. Acts No. 422, §1. Paragraph (B) now provides:

> Unless extended by the court and agreed to by all of the parties, a motion for summary judgment shall be filed, opposed, or replied to in accordance with the following provisions:
>
> (1) A motion for summary judgment and all documents in support of the motion shall be filed and served on all parties in accordance with Article 1313 not less than sixty-five days prior to the trial.
>
> (2) Any opposition to the motion and all documents in support of the opposition shall be filed and served in accordance with Article 1313 not less than fifteen days prior to the hearing on the motion.
>
> (3) Any reply memorandum shall be filed and served in accordance with Article 1313 not less than five days prior to the hearing on the motion. No additional documents may be filed with the reply memorandum.
>
> (4) If the deadline for filing and serving a motion, an opposition, or a reply memorandum falls on a legal holiday, the motion, opposition, or reply is timely if it is filed and served no later than the next day that is not a legal holiday.

The standard of review applicable to summary judgment is well known:

> Courts of appeal review summary judgments de novo applying the same analysis as the trial court. *Schroeder v. Bd. of Supervisors of La. State Univ.,* 591 So.2d 342 (La.1991). Summary judgment is governed by La.Code Civ.P. arts. 966 and 967. Article 966 provides that while the burden of proving entitlement to summary judgment rests with the mover, if the mover will not bear the burden of

3

> proof at trial on the matter that is before the court on the motion for summary judgment, the mover's burden does not require him to negate all essential elements of the adverse party's claim, action or defense, but rather to point out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. *Hardy v. Bowie,* 98-2821 (La. 9/8/99), 744 So.2d 606.

*Berard v. Home State County Mut. Ins. Co.,* 11-1372, p. 2 (La.App. 3 Cir. 5/9/12), 89 So.3d 470, 471–72.

In the present case, it is undisputed that Plaintiff failed to file his opposition memorandum within the timeframe mandated in La.Code Civ.P. art. 966(B)(2).  The record clearly reflects Plaintiff's opposition was mailed to the trial court and served on the parties just thirteen days before the scheduled hearing on the motions for summary judgment, far short of the fifteen days provided in La.Code Civ.P. art 966(B)(2). Although, under La.Code Civ.P. art. 966(B), the trial court could have extended the deadline with the agreement of the parties,  this condition was not met because Superior and Shelf objected to Plaintiff's late-filed memorandum.   As an appellate court who reviews summary judgment matters de novo, we find Plaintiff's opposition untimely.   As such, we consider Superior's and Shelf's motions for summary judgment unopposed.[5]

---

[5] *See and compare Buggage v. Volks Constructors*, 06-175 (La. 5/5/06), 928 So.2d 536 (per curiam) (holding the time limitation established by La.Code Civ.P. art. 966(B) for the service of affidavits in opposition to a motion for summary judgment is mandatory and finding no abuse of discretion by the trial court's exclusion as inadmissible affidavits not timely filed); *Bond v. Your Mom's Restaurant and Bar*, 18-924 (La.App. 1 Cir. 12/21/18) (unpublished opinion) (holding that a motion to strike was an appropriate procedural vehicle to attack the admissibility of opposition documents based on their untimeliness); and *Lewis v. Old Republic Ins. Co.*, 17-456 (La.App. 3 Cir. 8/23/17), 226 So.3d 557 (finding that where the mover filed a motion to strike, the trial court has no discretion to allow a late-filed opposition to motion for summary judgment as mandated by La.Code Civ.P. art. 966(B)(2) when the parties have not agreed otherwise).

After reviewing the memoranda and attachments de novo, we find the trial court properly granted summary judgment in this matter. It is clear Superior, Doucet, and Plaintiff were independent contractors.

In *Thompson v. Winn-Dixie Montgomery, Inc.*, 15-477 (La. 10/14/15), 181 So.3d 656, 665, the supreme court stated:

> [A] principal is not liable for the offenses committed by an independent contractor while performing its contractual duties. *Ellerbe v. Albertsons, Inc.,* 43,452 (La.App. 2 Cir. 8/13/08), 989 So.2d 303, 305; *Sys. Contractors Corp. v. Williams & Associates Architects,* 99–1221 (La.App. 5 Cir. 9/26/00), 769 So.2d 777, 781; *Thomas v. Albertsons, Inc.,* 28,950 (La.App. 2 Cir. 12/11/96), 685 So.2d 1134, *writ denied,* 97–0391 (La.3/27/97), 692 So.2d 395; *Morales v. Davis Brothers Construction Company, Inc.,* 94–0902 (La.App. 4 Cir. 12/15/94), 647 So.2d 1302, *writ denied,* 95–0139 (La.3/17/95), 651 So.2d 271. Two exceptions to this general rule exist: where the work is ultra-hazardous; or if the principal reserves the right to supervise or control the work of the independent contractor. *Sys. Contractors Corp.,* 769 So.2d at 781; *Ledent v. Guar. Nat. Ins. Co.,* 31,346 (La.App. 2 Cir. 12/28/98), 723 So.2d 531, 537.

Generally, Shelf as a principal is not liable for the offenses committed by an independent contractor. *Thompson*, 181 So.3d at 665. As to the two exceptions to the general rule, the motions for summary in the present case showed there was no ultrahazardous work involved and Shelf retained no control or supervision of Plaintiff's work. Likewise, the undisputed facts show Superior neither exercised control over Plaintiff's work nor provided authorization for the work practices Plaintiff chose to utilize in his clean up operation.

Although there is not a per se rule holding that a repairman may never recover while he is repairing the thing he has been hired to remove, *see Celestine v. Union Oil Co. of California*, 94-1868 (La. 4/10/95), 652 So.2d 1299, the individual circumstances[6] of the present case do not establish that the tank being dismantled

---

[6] As explained in *Celestine*, 652 So.2d at 1304:

[T]he individual circumstances, including but not limited to the social, moral, economic considerations, the degree of knowledge of the repairman, the incentive

5

presented an unreasonable risk of harm. In the present case, the undisputed evidence shows: Plaintiff had performed similar tasks prior to this accident; he previewed the work site and saw nothing to indicate that cutting the tanks would be unsafe; he admitted he thought he had all the equipment needed to perform the job and placed chocks on the tank to prevent the tank from rolling; he and his cousin felt he was qualified to do the work; and he was familiar with the condition of the tank before he commenced demolition. Moreover, the evidence shows that the tank collapsed when Plaintiff cut the tank with a welding torch, a method he chose to purposefully collapse the tank. Supported by well-established jurisprudence, we find the trial court properly dismissed Shelf and Superior on their motions for summary judgment.

## DISPOSITION

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Warren Doucet.

**AFFIRMED.**

---

or disincentive to the owner to repair the vice or defect, the reasonableness of presuming that a particular repairman is cognizant of the particular risks, and the ability of the repairmen to minimize such risks, should all be factored into and weighed in the "unreasonable risk" calculation.

6